Vicente **GONZALEZ–GOMEZ**, Petitioner-Appellant,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent-Appellee.

No. 25488.

United States Court of Appeals, Ninth Circuit.

Oct. 11, 1971.

Donald L. Ungar (argued), of Phelan, Simmons & Ungar, San Francisco, Cal., for petitioner-appellant.

Brewster Q. Morgan, Asst. U. S. Atty., Sacramento, Cal. (argued), Dwayne Keyes, U. S. Atty., Richard V. Boulger, Asst. U. S. Atty., Fresno, Cal., for respondent-appellee.

Before KILKENNY and CHOY, Circuit Judges, and POWELL,* District Judge.

CHOY, Circuit Judge:

Vicente Gonzalez-Gomez appeals from a District Court decision that he is not a citizen of the United States and thus is subject to deportation. We reverse.[1]

Appellant was born in Cerano, Mexico, on July 25, 1938.[2] His mother, a United States citizen, was born in Los Angeles County, California, and at the time of appellant's birth was living in Mexico. Appellant's father was a Mexican citizen. At birth appellant became a United States citizen by the operation of the predecessor statute of 8 U.S.C. § 1401 (a) (7).[3]

Congress has prescribed that such a citizen shall lose his "nationality and citizenship unless he shall come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United State [sic] for at least five years. * * *" 8 U.S.C. § 1401(b). Absences of less than twelve months in the aggregate during the five-year period do not break the continuity of such presence. 8 U.S.C. § 1401(b). Appellant claimed that he entered the United States in 1955, well before his twenty-third birthday on July 25, 1961, and that he fulfilled the requirement of physical presence in the United States. The Government sought to prove appellant had not complied with § 1401(b).

Since appellant became a citizen of the United States at birth, that citizenship must be deemed to continue until he has been deprived of it through the operation of congressional enactment or of his own voluntary act. Perkins v. Elg, 307 U.S. 325, 329, 59 S.Ct. 884, 83 L.Ed. 1320 (1939). Since it was undisputed that appellant's mother was a United States citizen, the burden was on the Government to prove that appellant had lost his citizenship through noncompliance with § 1401(b). The parties disagree on whether the burden of proof

---

* The Honorable Charles L. Powell, United States District Judge, Spokane, Washington, sitting by designation.

1. Initially, we grant the Government's motion under Fed.R.Civ.P. 60(a) to amend to the District Court's Memorandum and Order, Findings of Fact, Conclusions of Law, and Judgment to read "clear, unequivocal, and convincing" rather than "clear and convincing" wherever the latter term appears.

2. Despite stipulation at trial, the parties and the District Court differ on appellant's birth date, the Government adhering to the stipulated date of July 24, and the appellant and the District Court advancing July 25. The discrepancy is immaterial to the result we reach.

3. "(a) The following shall be nationals and citizens of the United States at birth:
* * *
(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years. * * *"

in an expatriation case such as this requires "clear, unequivocal, and convincing evidence," or merely a "preponderance of the evidence." We need not decide this issue for the Government's proof in this case, far from being clear, unequivocal, and convincing, did not even approximate a preponderance of the evidence.

The Government's witnesses and exhibits were all largely irrelevant to the central issue of when appellant entered the United States. Appellant was called as a Government witness and proved largely uninformative. His credibility was suspect, but this does not aid the Government. Appellant had already proven his own case. He need not prove the Government's as well. Testimony by individuals who had known and seen appellant in the United States after 1961 was also irrelevant. The Government never contended that appellant lost his citizenship by actions committed since 1961. It maintained that he had not satisfied § 1401(b). Appellant's frequent and lengthy visits to his mother in Mexico, and travels there with his ex-wife would have been relevant under § 1401(b) if they had occurred before 1961. They did not. Similarly, appellant's possession of a Mexican identity card issued in 1961, his acceptance of a border visa, the absence of his work records at places where he claimed to have worked were all beside the point. These facts were merely negative evidence. They did not affirmatively prove that appellant did not enter the United States in 1955 and that he did not satisfy the statute.

The Government offered an affidavit signed by appellant during an Immigration Office investigation. In this affidavit, appellant says that he is a Mexican citizen and that he did not come to the United States prior to 1961.[4] The probative value of this document is severely undermined by the circumstances of its execution. Appellant is illiterate. He can neither read nor write English; he cannot read Spanish. The affidavit was drafted by an immigration investigator with a "working knowledge of Spanish," who asked appellant a question in Spanish, heard the reply, translated and then typed the answer in English into affidavit form. This process was clearly subject to misunderstanding an inaccuracy. For example, the affidavit speaks in terms of "residence." It is unlikely that appellant understood the legal significance of the term "residence" or that the officer used it properly. The statute speaks only of being "physically present" not of "residence." The affidavit neither alone nor with other evidence established the Government's case.

The Government seeks here to deprive appellant of the citizenship which was his at birth. As Mr. Justice Murphy said in Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796 (1943):

> " * * * [I]t is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized man. This does not mean that once granted, * * * citizenship cannot be revoked or cancelled on legal grounds upon appropriate proof."

---

4. Appellant argues that his affidavit is inadmissable because he was not informed of his right to an attorney. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We have previously held that in a deportation hearing in which a person is responding to an Order to Show Cause why he should not be deported, *Miranda* is inapplicable. LaVoie v. Immigration & Naturalization Service, 418 F.2d 732 (9th Cir. 1969). However, here the record is clear that appellant was under arrest and subject to custodial interrogation by the Immigration Officer. Since we find that with or without the affidavit the Government has not presented sufficient evidence to prove noncompliance with the statute, we need not rule on the applicability of *Miranda* to these circumstances.

The Government has not affirmatively sustained whatever burden of proof is appropriate, be it "clear, unequivocal, and convincing," or a "mere preponderance of" the evidence."

Reversed.