In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1665

MARIA EMILOVA POUHOVA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A078-859-072

ARGUED DECEMBER 4, 2012 — DECIDED AUGUST 13, 2013

Before BAUER and HAMILTON, *Circuit Judges*, and THARP,
*District Judge.*[*]

HAMILTON, *Circuit Judge.* Petitioner Maria Pouhova, a
citizen of Bulgaria, has been ordered removed from the United
States. She argues she was deprived of her procedural rights

---

[*]  Hon. John J. Tharp Jr. of the Northern District of Illinois, sitting by
designation.

when an immigration judge admitted and based his decision
on two hearsay documents: a statement taken from a woman
who attempted to enter the United States using Pouhova's
Bulgarian passport, and a Department of Homeland Security
inspector's report of his conversation with the woman pre-
pared seven years after it occurred. Pouhova petitions for
review of the Board of Immigration Appeals' decision affirm-
ing the immigration judge's removal order. Although the
Federal Rules of Evidence do not apply in removal hearings,
there are several substantial reasons why both documents are
not reliable and should not have been used without Pouhova's
having an opportunity to cross-examine the declarant or
author. We therefore agree with Pouhova that use of both
documents violated her procedural rights. The order of
removal must be vacated and her case remanded for a new
hearing.

I.  *Factual and Procedural Background*

   Maria Pouhova is a Bulgarian citizen who entered the
United States on a student visa in 1999. She overstayed her visa
but married a U.S. citizen and applied for an adjustment of
status. Pouhova received a Notice to Appear for removal
proceedings in October 2007. It alleged three grounds for
removal, but the only one of consequence at this point is a
smuggling charge for assisting an alien trying to enter the
United States illegally. See 8 U.S.C. § 1227(a)(1)(E)(i).[1]

---

[1] The other two grounds are no longer at issue. Pouhova conceded that she
was inadmissible for failing to maintain non-immigrant status after her
student visa expired, see 8 U.S.C. § 1227(a)(1)(C)(i), but her marriage to a

(continued...)

At her removal hearing, the government presented two documents as its only evidence to support the smuggling charge. The first is a written statement from the woman who attempted to use Pouhova's Bulgarian passport to enter the United States back in 2000. The woman, who gave the name Boriana Dimova, arrived at O'Hare Airport on June 21, 2000 and gave a statement to an immigration official, Inspector Bryan Weiler. The statement consists of 30 questions by Weiler and Dimova's responses. The document states that it was taken in English but without an interpreter due to lack of funding. Dimova's responses indicated that she presented a passport with Pouhova's information on it and that the information and passport did not belong to her. For our purposes, the key questions and answers were:

> Q21: Did anyone assist you in obtaining your passport?
>
> A21: Nataliy. She lives in the U.S.
>
> Q22: What is the name of the person who sold you this passport?
>
> A22: Nataliy sent me it.
>
> Q23: How much did you pay for this passport?
>
> A23: I didn't pay anything yet.

---

[1] (...continued)
U.S. citizen would permit a waiver of that problem. The immigration judge found that the government failed to prove that Pouhova falsely held herself out as a U.S. citizen in a mortgage loan application, see 8 U.S.C. § 1227(a)(3)(D)(i), and the government did not contest that finding further.

> Q24: Do you still owe money to the people who arranged for you to travel to the United States today?
>
> A24: I will pay Maria Puohova (sic) $1500 later, after I begin working in U.S.
>
> …
>
> Q28: Who are your intended contacts in the United States?
>
> A28: Nataliy and Maria Puohova (sic).

The second document is a Department of Homeland Security record, Form I-213, which is a "record of deportable alien." Like the Dimova statement, it was also prepared by Inspector Weiler, but more than seven years later, on October 25, 2007. It includes Weiler's account of the grounds for Pouhova's removability and reports on his 2000 interview with Dimova:

> On June 21, 2000, Boriana DIMOVA, the subject's relative, was issued an Order of Expedited Removal upon arrival at Chicago, IL attempting to enter the U.S. with POUHOVA's Bulgarian passport and non-immigrant student visa. DIMOVA stated under oath that POUHOVA mailed her the passport. POUHOVA arranged for DIMOVA's travel as an impostor to her passport and was to be paid $1500 U.S. dollars by DIMOVA … . POUHOVA lost her Bulgarian passport in January 2002, but this contradicts the fact that DIMOVA had it in her possession when apprehended on June 21, 2000. Based on birth

> certificate data, POUHOVA and DIMOVA appear to
> be cousins.

Pouhova challenged the admission of the Dimova state-ment and the Form I-213 as unreliable because Dimova was apparently not fluent in English and no interpreter was available, and as too prejudicial to be admitted without the opportunity to cross-examine Dimova. The government offered to present Weiler as a witness to testify about the circumstances surrounding the interview.

At the first hearing, the judge declined to admit or take any action on the documents or the objection and continued the hearing to give the government time to arrange for Weiler to appear and to make reasonable efforts to locate Dimova, who had been removed to Bulgaria. At the second hearing, the government did not produce either Dimova or Inspector Weiler. Nevertheless, the immigration judge admitted and considered both the I-213 form and the recorded Dimova statement. IJ Decision at 7, 9; App. 17, 19.[2]

Pouhova testified on her own behalf. She denied giving her passport to anyone. Instead, she testified that she lost it but did not discover it was missing until late 2001 or early 2002, after she had married a U.S. citizen and looked for her passport to apply for adjustment of status. She explained that she had been advised to store her passport and other important documents

---

[2] The immigration judge's decision ("IJ Decision"), the Board's 2010 decision ("BIA 2010"), and the Board's 2012 decision ("BIA 2012") can be found in the Appellant's appendix. The appendix is not clearly paginated, so we cite both the pages of each decision and the pages in the appendix as a whole.

in a special folder in her home. She had not looked in the folder since 1999 because she had other forms of identification and did not use her passport. She also denied knowing of any Boriana Dimova and had no relative with that name. She also testified that she had not heard of the use of her Bulgarian passport until 2004 when U.S. authorities denied her application for adjustment of status. On these points the government's cross-examination of Pouhova was perfunctory and did not undermine her credibility.

The immigration judge ultimately decided to credit both of the government's documents and found that Pouhova's contrary testimony was not credible. The judge found that the government showed by clear and convincing evidence that Pouhova assisted in smuggling an alien into the United States. This finding rendered Pouhova inadmissible and removable. See 8 U.S.C § 1182(a)(6)(E)(i); § 1227(a)(1)(E)(i).[3] It also rendered Pouhova ineligible for discretionary relief from removal in the form of adjustment of status, which would otherwise have been available to her because of her marriage to a U.S. citizen.[4] In the alternative, the immigration judge found that

---

[3] Inadmissibility and removability are distinct designations under the immigration laws. An alien is "inadmissible" if the government may prevent her from entering or reentering the United States or if she is present in the United States without having been lawfully admitted. See 8 U.S.C. § 1182(a) (grounds for inadmissibility). An alien is "removable" if she has violated the immigration laws, even if she had been lawfully admitted. See 8 U.S.C. § 1227(a) (grounds for removability).

[4] Although Pouhova conceded inadmissibility for not maintaining her

(continued...)

even if she were not inadmissible for smuggling, she would not merit a favorable exercise of discretion and he would deny her adjustment of status.

Pouhova appealed to the Board of Immigration Appeals. In the course of two opinions, the Board affirmed the decision of the immigration judge.[5] The Board's modified decision held: (a) that the immigration judge's adverse credibility determination about Pouhova's testimony was not clearly erroneous, (b) that the admission of the I-213 and the Dimova statement did not violate Pouhova's procedural rights, (c) that the government met its burden of showing that Pouhova was inadmissible and removable for smuggling, and (d) that Pouhova did not merit a favorable exercise of discretion. Pouhova petitioned for review in this court, arguing that the admission of the two

---

[4] (...continued)

student visa, adjustment of status would still be available to her because of her marriage to a U.S. citizen, so long as the judge found that she merited a favorable exercise of discretion. See 8 U.S.C. § 1255(c)(2) (adjustment of status not available to those who work without authorization or who are in unlawful immigration status, unless the alien is an immediate relative under 8 U.S.C. § 1151(b) (which includes spouse) of a U.S. citizen); 8 U.S.C. § 1229a(c)(4)(A).

[5] The Board issued an opinion on November 26, 2010, but after Pouhova sought judicial review the government moved this court to remand the case to the Board for further clarification of whether the proceedings violated Pouhova's process rights. We granted the motion and remanded to the Board. *Pouhova v. Holder*, Order, No. 10-3864 (7th Cir. May 13, 2010). On remand the Board affirmed its prior decision and supplemented it in a modified opinion issued on February 27, 2012. This procedural history is not relevant to the present issues. We consider the ultimate determinations of the Board as expressed in both opinions.

documents violated her procedural rights in removal proceedings.

II. *Analysis*

Aliens in removal proceedings are entitled to due process of law under the Fifth Amendment. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Statutory provisions also impose procedural requirements on removal proceedings. See 8 U.S.C. § 1229a(b)(4). Any proceeding that meets the requirements of the statute also satisfies constitutional due process. *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006). Because Pouhova does not challenge the constitutional adequacy of the statutory rights, we focus our analysis on those statutory rights. See *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (focus should be on statutes and relevant regulations).

Under section 1229a(b)(4)(B), an alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." An alien who challenges a removal order by claiming a violation of these rights must show both that the proceeding did not meet these requirements and that she was prejudiced. *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007).

Evidence in removal proceedings need not conform strictly to the Federal Rules of Evidence, but it must be probative and its admission must be "fundamentally fair." *Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009). The fairness of a piece of evidence depends in part on its reliability. *Duad v. United States*, 556 F.3d 592, 596 (7th Cir. 2009) (despite flexibility of

evidentiary rules in removal proceedings, "evidence must, in the final analysis, be reliable"); see also *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (fairness in the context of evidence is "closely related to the reliability and trustworthiness of the evidence") (internal quotations omitted); *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008) (same).

Because the Board ultimately agreed with the immigration judge's decision and supplemented that opinion with its own observations, we review both the immigration judge's and the Board's decisions. See *Sirbu v. Holder*, 718 F.3d 655, 658 (7th Cir. 2013). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). To the extent Pouhova challenges the denial of discretionary relief, we retain jurisdiction to review the constitutional and legal claims she raises in her petition for review. 8 U.S.C. § 1252(a)(2)(D). We review *de novo* the legal question whether the admission of each document violated Pouhova's procedural rights in a removal proceeding and, if so, whether those admissions prejudiced her. *Gutierrez-Berdin v. Holder*, 618 F.3d 647, 651 (7th Cir. 2010).

We conclude that both documents violated Pouhova's statutory procedural rights. As hearsay, neither document was reliable enough to be fairly admitted without the opportunity for Pouhova to cross-examine either the declarant or the questioner/scribe. The Dimova statement was taken in English without an interpreter, and Pouhova had no opportunity to question either Dimova or Inspector Weiler about Dimova's English language abilities. The I-213 was written seven years after the conversation it reports on took place, it is inconsistent with the Dimova statement in significant ways, and its sources

are unreliable. Because the two unreliable documents were the government's only evidence of the smuggling charge, their admission without any opportunity for cross-examination of Dimova or Weiler prejudiced Pouhova. We must remand for a new removal hearing.

A.  *Unreliable Hearsay*

1.  *The Dimova Statement*

Both the immigration judge and the Board deemed the Dimova statement properly admissible in Pouhova's removal proceedings. We disagree. The interview was conducted in English without an interpreter. There was no evidence about Dimova's English language skills, and Pouhova did not have the opportunity to cross-examine either Dimova or the interviewing officer about Dimova's ability to participate in the interview.

The Fifth Circuit addressed a similar situation in *Hernandez-Garza v. I.N.S.*, 882 F.2d 945 (5th Cir. 1989), when it considered an *ex parte* affidavit by a witness who could not read or speak English. The immigration judge did not permit the petitioner to question the agents who took the affidavit about their Spanish skills. The Fifth Circuit held that this denied the petitioner a fair hearing, noting that "the probative value of statements written in a language that the witness can neither read nor speak, absent corroboration, is questionable at best." *Id*. at 948 (internal quotations omitted), citing *Guzman-Guzman v. I.N.S.*, 559 F.2d 1149, 1150 (9th Cir. 1977) (written witness statements by "authors who neither spoke nor read the language in which they were written," which the authors disclaimed at the live hearing, were unfairly admitted in

removal hearing, but testimony of agents provided sufficient corroboration). Other courts have found that the reliability of a statement decreases when it reports on a conversation hindered by language barriers. See *Gonzalez-Gomez v. I.N.S.*, 450 F.2d 103, 105 (9th Cir. 1971) (document unreliable where alien could not speak or read English and could not read Spanish, and interviewer's Spanish skills were unknown).

In the asylum context, we have said that airport interviews "are useful only if they are reliable." *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 923 (7th Cir. 2005). An interview may not be reliable where significant language barriers exist, even when a translator is used. *Balogun v. Ashcroft*, 374 F.3d 492, 504–05 (7th Cir. 2004) (reliability concerns the applicant's "ability to answer the interviewer's questions," for example, "if there are language barriers"), citing *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004) (listing factors for considering reliability of airport interviews, including "if the alien's answers to the questions posed suggest that the alien did not understand English or the translations provided by the interpreter, the alien's statements should be considered less reliable").

The government argues that the statement is sufficiently reliable as hearsay because it was against Dimova's penal interest. See *Matter of Devera*, 16 I. & N. Dec. 266, 270 (BIA 1977) (*ex parte* affidavit admissible where it included statement against penal interest as it would have been admissible under the Federal Rules of Evidence). That argument is not persuasive here for two reasons. First, it is circular. Whether the answers recorded by Inspector Weiler were against Dimova's penal interest or not says nothing about whether she under-

stood the questions and he understood her answers as she intended them. Second, it is not clear what additional penalties Dimova's statements implicating Pouhova exposed her to beyond immediate removal, which she already faced.[6] She had already been caught attempting to use the passport and visa of another person. Her further claim that she planned to pay Pouhova $1,500 served to implicate only Pouhova, not Dimova. Cf. *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 682 (9th Cir. 2005) (witness "was herself at risk of a felony prosecution under 8 U.S.C. § 1326 because she had previously been deported and had reentered the country illegally. Thus she was not, by any means, a disinterested witness."). In any event, the uncertainty and lack of testimony about Dimova's English skills without an interpreter render the report unreliable, whether against penal interest or not. It was not fundamentally fair to admit the statement without an opportunity for Pouhova to question Dimova or Weiler about Dimova's ability to participate in the interview.

### 2. *Form I-213*

The immigration judge gave "full weight" to the I-213, IJ Decision at 9; App. 19, and the Board affirmed, finding that the I-213 was "probative and its use fundamentally fair." BIA 2012 at 3; App. 4. We disagree with both the Board and the immigration judge.

---

[6] Dimova was subject to expedited removal proceedings and was removed the day after her interview. In the expedited removal process, an alien may be charged with an additional ground of inadmissibility for misrepresentation, 8 C.F.R. § 235.3(b)(3), but that would not amount to an additional punishment because she was already removable.

Form I-213, Record of Deportable Alien, is a DHS form that is typically a record of an immigration inspector's conversation with an alien who will probably be subject to removal. See *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088 (7th Cir. 1994). As a general rule, a Form I-213 is treated as inherently trustworthy and admissible even without the testimony of the officer who prepared it. *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009), citing *In re Ponce-Hernandez*, 22 I. & N. Dec. 784, 785 (BIA 1999).

In a specific case though, a particular Form I-213 may not be inherently reliable. For example, it may contain information that is known to be incorrect, it may have been obtained by coercion or duress, it may have been drafted carelessly or maliciously, it may mischaracterize or misstate material information or seem suspicious, or the evidence may have been obtained from someone other than the alien who is the subject of the form. See *Barradas*, 582 F.3d at 763–64 (listing reasons I-213 may not be inherently reliable); *Rosendo-Ramirez*, 32 F.3d at 1088 ("Since the I-213 is supposed to be a record of a conversation with an alien, courts have evaluated its probative value by considering whether there is evidence that the form is inaccurate or that the information recorded in it was obtained by someone other than the alien himself.").

The I-213 here exhibits several shortcomings that undermine the usual presumption of reliability, none of which were addressed by the Board. First, the seven-year lapse between the reported conversation and the preparation of the I-213 calls the form's "inherent reliability" into serious doubt. The government argues that an I-213 is inherently reliable without its author's testimony because it is comparable to a record of a regularly conducted activity under the hearsay exception in

Federal Rule of Evidence 803(6). See *Barradas*, 582 F.3d at 763 (reasoning that where statement was recorded by DHS agent in a public record, the absent agent "cannot be presumed to be an unfriendly witness or other than an accurate recorder," and that the I-213 was intended to serve purely as an impartial administrative record) (internal quotations omitted). Such a record loses its credibility if it is prepared long after the events or statements it purports to capture. See Fed. R. Evid. 803(6)(A) (excepting from the general prohibition of hearsay evidence records of a regularly conducted activity only if "the record was made *at or near the time* by—or from information transmitted by—someone with knowledge") (emphasis added); see also *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983) ("The lengthy interval between the time the memorandum was written, and some of the events it describes (one year and ten months) does not meet the exception's 'timeliness requirement,' and therefore it is not admissible under Rule 803(6)."). Although removal proceedings are not held strictly to the standards of the Federal Rules of Evidence, of course, the staleness of this I-213 undermines the presumption of reliability. The delay rendered the report too susceptible to errors, material omissions, and mistaken insertions.

This I-213 in fact exhibited strong indications of such inaccuracies: it differs from the Dimova statement in several important respects. The I-213 states that Dimova said that Pouhova mailed her the passport, but the Dimova statement said that "Nataliy sent me it." The I-213 claims that Pouhova arranged for Dimova's travel, but the Dimova statement does not include a direct statement about who arranged for her travel. Rather, the I-213 appears to have read a great deal into

Dimova's recorded response to the question "Do you still owe money to the people who arranged for you to travel to the United States today?" Dimova answered, "I will pay Maria Puohova [sic] $1500 later … ." That non-responsive answer does not indicate that Pouhova arranged for her travel; it indicates only that Dimova planned to pay her. The I-213 also asserts that Pouhova and Dimova were cousins, but there is no support for that assertion in Dimova's answers to questions and no other apparent basis for it. (Pouhova testified that Dimova is a common family name in Bulgaria.) All of these discrepancies indicate at the very least that the form was "drafted carelessly" and is not inherently reliable. See *Barradas*, 582 F.3d at 763.

There is a final fault with the I-213's reliability—its sources. First, it appears to rely in relevant part on Dimova's airport statement, which we have already determined was unreliable because it was taken without a translator and no one was available to testify about Dimova's ability to participate in the interview. Second, most I-213s are records of conversations with the alien who is the subject of the removal proceedings, and they report the conversations as evidence of that alien's removability. This I-213 recorded a conversation not with Pouhova, who was the subject of the form and the removal proceedings, but with Dimova. This is a significant difference because neither party to the conversation was present at Pouhova's removal proceedings. In a more typical case, the subject herself will have some basis to contest the statements in the document. She will have been present for the conversation that was reported.

We have not found, and the parties have not cited, any examples of a court affirming the admission of an I-213 under circumstances like these. Basing a removal decision on such a document when neither the author nor the interviewee is available for cross-examination seriously erodes the fairness of the proceeding. Cf. *Rosendo-Ramirez*, 32 F.3d at 1088 (I-213 admissible despite petitioner's objections that information it contained was obtained from others in group interview where petitioner could have made the statements himself and presented no evidence that he did not, and where recording officer was present for cross-examination at the hearing). This I-213 therefore was not inherently reliable because it was recorded seven years late, its critical information was obtained from someone other than the subject of the form, and it contradicts the other written account of its source.

B. *"Reasonable Efforts"*

Despite the unreliability of both documents, the government argues that the Board correctly found that both were fairly admitted because the government made "reasonable efforts" to locate both witnesses. It argues that we should join other circuits in finding that an absent witness's statements may be fairly admitted in a removal proceeding when the government has made reasonable but unsuccessful efforts to locate the witness. See, *e.g.*, *Ocasio v. Ashcroft*, 375 F.3d 105, 107 (1st Cir. 2004) ("the INS may not use an affidavit from an absent witness unless the INS first establishes that, despite reasonable efforts, it was unable to secure the presence of the witness at the hearing") (internal quotations omitted); see also *Saidane v. I.N.S.*, 129 F.3d 1063, 1065 (9th Cir. 1997); *Olabanji v. I.N.S.*, 973 F.2d 1232, 1234 (5th Cir. 1992); *Dallo v. I.N.S.*,

765 F.2d 581, 586 (6th Cir. 1985); *Matter of Devera*, 16 I. & N. Dec. 266, 269 (BIA 1977). Our circuit has not formally adopted this rule. See *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (recognizing that "[s]everal circuits have concluded that, when an alien wants to cross-examine a witness, the agency not only must issue a subpoena but also must use reasonable efforts to enforce that subpoena," but finding no need to decide whether to adopt the standard because the government had not met it).

We have serious doubts about this "reasonable efforts" theory, at least as it might apply to this case, where the two hearsay documents bear so many indicia of unreliability. We do not see why making an unsuccessful effort to locate a witness renders the unreliable hearsay evidence any more reliable or its use any fairer than without such effort.

But we need not resolve this question here. Even if we assume that "reasonable efforts" to locate the witnesses would suffice, the government failed to make such reasonable efforts here. Cf. *Malave*, 610 F.3d at 487. With regard to Inspector Weiler, the government admitted that it *chose* not to call him, given circumstances that the government chose not to explain. AR 220–21. "Choosing" not to call him does not amount to "reasonable efforts" to secure his testimony, and any such efforts do not redeem the admission of this I-213. Accord, *Saidane*, 129 F.3d at 1065 (where "the INS made no effort to call an admittedly available witness and relied instead on that witness's damaging hearsay affidavit," admission of the affidavit rendered hearing fundamentally unfair). With regard to Dimova, the government checked various databases and found no indication that she had returned to the United States. Even if the government made reasonable efforts to locate her,

though, that is not the relevant question. Rather, the government needed to locate only a witness who could testify to her language skills during the interview, which clearly included Inspector Weiler. Its efforts to ensure that Dimova had not reentered the United States were not sufficient where it also failed to make reasonable efforts to have Weiler testify.

In sum, it was not fundamentally fair to admit either the Dimova statement or the I-213. Both were unreliable hearsay, and Pouhova was denied a reasonable opportunity to cross-examine both witnesses. Even if we agreed with the "reasonable efforts" rule, the government failed to make reasonable efforts to secure the presence of Inspector Weiler or of any witness who could speak to Dimova's ability to participate in the interview.

## C. *Prejudice*

These two unreliable hearsay documents were the government's only evidence supporting the smuggling charge and the only basis for questioning Pouhova's credibility. Their admission seriously prejudiced Pouhova's ability to show she was not removable for smuggling. Cf. *Pronsivakulchai v. Gonzales*, 461 F.3d 903, 908-09 (7th Cir. 2006) (denial of reasonable opportunity to present evidence in removal proceedings prejudiced petitioner because it affected the outcome of her hearing). Pouhova was thus deprived of her statutory rights under 8 U.S.C. § 1229a(b)(4)(B).

## D. *Remaining Issues*

Because Pouhova was denied a "reasonable opportunity" to cross-examine the witnesses against her in violation of

8 U.S.C. § 1229a(b)(4)(B) and the evidence admitted against her was fundamentally unfair, we must remand for a new hearing that comports with her constitutional, statutory, and regulatory procedural rights. See *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009) ("Remand is generally necessary when an alien is prevented from reasonably presenting her case or when an IJ's actions prevent the introduction of significant testimony.").

We also vacate the Board's findings of Pouhova's credibility, removability, inadmissibility, and ineligibility for discretionary relief. All of those findings were based on the evidence that was improperly admitted. The finding that she was removable and inadmissible on account of the smuggling charge cannot stand if the government's evidence supporting the charge was admitted unfairly. The finding that Pouhova did not merit a favorable exercise of discretion must also be vacated because the evidentiary errors made by the immigration judge affected the entire hearing process and outcome, including the discretionary determination.[7]

---

[7] The government argues that we do not have jurisdiction to review the determination that she was not eligible for discretionary relief. We do not have jurisdiction to review a discretionary denial of adjustment of status, see 8 U.S.C. § 1252(a)(2)(B), but "[o]ur jurisdiction is not so limited, however, when it comes to 'constitutional claims or questions of law' that are related to the denial of an application for adjustment of status." *Wroblewska v. Holder*, 656 F.3d 473, 477 (7th Cir. 2011), citing 8 U.S.C. § 1252(a)(2)(D). Pouhova's proceedings violated her statutory procedural rights. She raised that legal claim in her petition for review. Although the immigration judge's alternative holding that she would not merit a favorable exercise of discretion was a discretionary decision, it was based

(continued...)

III.  *Conclusion*

Pouhova's petition for review is GRANTED and we VACATE the Board's orders affirming the immigration judge's findings that (1) Pouhova's testimony was not credible, (2) Pouhova was inadmissible for smuggling, (3) the government showed by clear and convincing evidence that she was removable for alien smuggling, and (4) Pouhova did not merit a favorable exercise of discretion. The case is REMANDED to the Board of Immigration Appeals for a new hearing consistent with this opinion.

---

[7] (...continued)

on evidence that was admitted in legal error. We thus have jurisdiction to review the discretionary determination to the extent that we must vacate it for reconsideration upon remand for proceedings that conform to the statutory requirements. See *Tun v. Gonzales*, 485 F.3d 1014, 1016 (8th Cir. 2007) (in case where court found evidentiary due process violations, "[w]e need not address the parties' arguments as to whether we have jurisdiction to review the Board's denial of voluntary departure. Our remand on the other issues moots the Board's ruling on voluntary departure and requires a reopening of the record.").