In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 13-2478 & 13-3263

KIRIL HRISTOV VIDINSKI,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent.*

———————————

Petitions for Review of Decisions of
the Board of Immigration Appeals.

No. A096-533-945

———————————

ARGUED OCTOBER 30, 2014 — DECIDED NOVEMBER 1, 2016

———————————

Before WILLIAMS and HAMILTON, *Circuit Judges.* [1]

———————————

[1] Judge Tinder was on the panel that heard oral argument. We held these petitions for review after argument so that the parties could pursue possible resolution, including through an exercise of prosecutorial discretion by the government. Over the summer of 2016, it became clear that an agreed resolution was unlikely. In the meantime, Judge Tinder has retired and did not participate in the decision. These petitions are being decided by a quorum pursuant to 28 U.S.C. § 46(d).

HAMILTON, *Circuit Judge*. Petitioner Kiril Vidinski is a native of Bulgaria. He entered the United States as a visitor in 1998 but overstayed his visa. He married a United States citizen, Constance Literski, in 2002, and in 2005 he and Ms. Literski filed petitions seeking legal permanent resident status for him. Before those petitions were resolved, Ms. Literski told an investigator for Immigration and Customs Enforcement (ICE) that the marriage had been a sham to obtain immigration benefits for Vidinski (and money for her). Removal proceedings resulted in a final order to remove Vidinski, and the Board of Immigration Appeals dismissed his appeal and later denied his motion to reopen proceedings based on ineffective assistance of counsel. He now seeks judicial review, arguing primarily that he was entitled to cross-examine Ms. Literski, whose affidavit was critical to the marriage fraud issue. We dismiss in part and deny the remainder of the petitions on their merits.

There is no doubt that Vidinski is removable for having overstayed his 1998 visa. Also, the Board denied his request for cancellation of removal based on "exceptional and extremely unusual hardship" to family members. See 8 U.S.C. § 1229b(b)(1)(D). That is a discretionary decision that we have no jurisdiction to review unless it involves constitutional claims or questions of law, *Stepanovic v. Filip*, 554 F.3d 673, 678 (7th Cir. 2009), and Vidinski presents no such claims or questions. To the extent Vidinski seeks review of the Board's denial of his hardship request, we dismiss for lack of jurisdiction.

We do have jurisdiction to consider the finding by the immigration judge, affirmed by the Board, that Vidinski had engaged in marriage fraud, which results in a lifetime ban on

being able to return to the United States. See 8 U.S.C. § 1154(c). Vidinski has raised legal issues within the scope of the jurisdiction authorized by 8 U.S.C. § 1252(a)(2)(D). In considering these issues, we review both the written decision of the immigration judge and the Board order adopting and affirming that decision. *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010). We review the Board's legal conclusions *de novo*, but we defer to its factual findings, "reversing the Board only if the record lacks substantial evidence to support its factual conclusions." *Sayaxing v. INS*, 179 F.3d 515, 519 (7th Cir. 1999).

I. *Removal Proceedings*

Under 8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(6)(C)(i), an alien who attempts to procure an immigration benefit by fraud or material misrepresentation—including marriage fraud—is subject to removal. The government must prove marriage fraud with clear and convincing evidence. *Surganova*, 612 F.3d at 904; see generally *Woodby v. INS*, 385 U.S. 276, 285–86 (1966).

In Vidinski's case, the government relied on the testimony of an ICE agent who interviewed Ms. Literski as part of an investigation into an extensive marriage fraud ring in Chicago.[2] The central figure in the ring was Jeremy Starnes. A man named Dion Liebich told the ICE agent that Starnes had helped him arrange his own fraudulent marriage and that he (Liebich) had referred Ms. Literski to Starnes. Following that

---

[2] The investigation led to an indictment resulting in sixteen convictions and two fugitive defendants.

lead, the agent contacted Ms. Literski and interviewed her in January 2011.

According to the agent, Ms. Literski admitted that her marriage to Vidinski had been fraudulent. She said that Liebich (her former boyfriend) told her she could make money by entering into a sham marriage. Liebich arranged a meeting among Starnes, Ms. Literski, Vidinski, and another man. After that meeting, Ms. Literski and Vidinski married. Ms. Literski was paid $1,000 the day of the marriage, with promises of more payments to come. She told the agent that Vidinski paid her a total of more than $5,000 over the course of the marriage, but she never lived with him and never had sexual relations with him. No criminal charges have been filed against Ms. Literski, Vidinski, or Liebich.

Ms. Literski also told the agent that several photographs that she and Vidinski had submitted to support their 2005 petitions for lawful permanent resident status had been altered to appear to be pictures of the two of them together. Ms. Literski signed a sworn statement describing the fraudulent arrangement. Her statement is consistent with the agent's report.

The agent also testified that he served notices to appear on Vidinski and a Ms. Tzvetana Stanislavova, who had a child by Vidinski in 2005 while he was still legally married to Ms. Literski (and before Ms. Literski filed her I-130 petition on his behalf). Vidinski and Ms. Stanislavova are now married.

Additional documentary evidence supported the immigration judge's finding of marriage fraud. Vidinski submitted his federal and Illinois individual income tax returns for

twelve years, from 1998 to 2009. All indicated that he was single, even though he was married to Ms. Literski from 2002 to 2009. (The government submitted a different return for 2005 that listed Vidinski and Ms. Literski as married, filing jointly, around the time of their interviews on her I-130 petition. That discrepancy has not been explained.) None of the documents submitted in support of adjustment of status disclosed that Vidinski had a son born in 2005 to Ms. Stanislavova.

The most unusual feature of this case, apparently unprecedented in the experience of the veteran immigration judge, was that in response to the government's evidence about the fraudulent nature of the marriage, Vidinski just refused to testify at all. The judge provided ample warnings to Vidinski and his counsel that he might draw adverse inferences from that refusal. In his decision, the judge reasonably refused to consider Vidinski's affidavit claiming the marriage had been bona fide. Vidinski also offered some records of a joint bank account from 2004–06, around the time of the immigration petitions and interview, but he was not willing to testify to explain those documents or any other facts relevant to the issue of marriage fraud.

The immigration judge concluded that the government had shown by clear and convincing evidence that Vidinski's marriage to Ms. Literski had been fraudulent. The judge wrote that the agent's testimony was detailed and consistent and supported by his contemporaneous memorandum about his interview with Ms. Literski. And he noted that Vidinski had refused to testify and offered no rebuttal evidence. The judge therefore denied Vidinski's request for cancellation of removal and ordered his removal to Bulgaria.

Vidinski sought review before the Board of Immigration Appeals, which adopted the immigration judge's decision and dismissed Vidinski's appeal in a June 20, 2013 order. The Board denied his subsequent motion to reopen proceedings, and Vidinski petitioned for judicial review of both decisions.

II. *Analysis*

On judicial review, Vidinski focuses on the fact that Ms. Literski did not testify in person before the immigration judge. He argues first that the government failed to meet its burden to prove marriage fraud by clear and convincing evidence. See *Surganova*, 612 F.3d at 904. He argues second that he was denied both statutory and constitutional rights to cross-examine adverse witnesses. See 8 U.S.C. § 1229a(b)(4)(B) (alien in removal proceedings shall have reasonable opportunity to examine unfavorable evidence, present favorable evidence, and cross-examine adverse witnesses). "Evidence in removal proceedings need not conform strictly to the Federal Rules of Evidence, but it must be probative and its admission must be 'fundamentally fair.'" *Pouhova v. Holder*, 726 F.3d 1007, 1011 (7th Cir. 2013), quoting *Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009). We reject these arguments.

First, the Board and immigration judge did not err in concluding that the government had proven by clear and convincing evidence that Vidinski's marriage to Ms. Literski was fraudulent. Ms. Literski's account of the fraud was presented as hearsay through her sworn statement and the agent's testimony concerning his interview with her. That hearsay had sufficient indicia of reliability for use in these administrative proceedings. Ms. Literski's admissions of fraud were admissions against her own penal interest, making it unlikely that

she was lying. Also, her account was consistent with the available documentary evidence, and the agent's testimony was—the judge found—detailed, internally consistent, and consistent with the documentary evidence. The use of this hearsay in this administrative hearing was permissible. See, e.g., *Ogbolumani v. Napolitano*, 557 F.3d 729, 734 (7th Cir. 2009) (allowing use of hearsay summaries of witness interviews to prove marriage fraud where nothing suggested summaries were inaccurate or unreliable beyond inherent risks of summaries); *Duad v. Holder*, 556 F.3d 592, 596 (7th Cir. 2009) (allowing use of reliable hearsay in immigration proceedings).

Perhaps most notable here is Vidinski's choice not to testify and not to offer any rebuttal evidence. The key evidence the immigration judge heard was hearsay, but it was detailed and consistent, with indications of reliability, and it was corroborated by available documentary evidence. To weigh against that evidence there was essentially nothing. The immigration judge did not err by finding that the government had proven marriage fraud by clear and convincing evidence.[3]

---

[3] The chronology did not obviously fit a story of marriage fraud. Vidinski and Ms. Literski were married in 2002 with assurances, according to the agent's investigation, that the marriage needed to last only six months. They did not file the I-130 and I-485 petitions until 2005, after Vidinski's son by Ms. Stanislavova had been born. They did not divorce until 2009. We might speculate about various explanations for the timing, but without any testimony or other evidence from Vidinski to rebut Ms. Literski's account of a fraudulent marriage, the immigration judge was not required to find that the government had failed to meet its burden of proof.

Second, Vidinski was not denied his statutory and constitutional right to cross-examine the witnesses against him. Although Vidinski contends that the government did not make reasonable efforts to have Ms. Literski or Liebich appear to testify, Vidinski's lawyer requested subpoenas for those witnesses, and the immigration judge issued those subpoenas. Despite the subpoenas, the witnesses did not appear, and there was apparently no further effort by anyone to require their attendance. Vidinski's lawyer told the immigration judge that she had talked to Ms. Literski, who reportedly said she was "told by the Government that she did not need to appear." There is no actual evidence backing up that vague assertion; even assuming the assertion is true, it does not establish that the government took any affirmative steps to prevent Ms. Literski from testifying at Vidinski's hearing.

An immigration judge has the authority to issue subpoenas for witnesses and to impose sanctions for failure to comply with those subpoenas. 8 U.S.C. § 1229a(b)(1). A regulation provides:

> If a witness neglects or refuses to appear and testify as directed by the subpoena served upon him or her in accordance with the provisions of this section, the Immigration Judge issuing the subpoena shall request the United States Attorney for the district in which the subpoena was issued to report such neglect or refusal to the United States District Court and to request such court to issue an order requiring the witness to appear and testify and to produce the books, papers or documents designated in the subpoena.

8 C.F.R. § 1003.35(b)(6).

During the hearing, when it became apparent that Ms. Literski had not appeared in response to the subpoena, neither attorney asked the immigration judge to follow through and request enforcement through the district court. Nor did Vidinski seek a continuance of the hearing so that further efforts could be made to compel Ms. Literski's testimony. He chose to argue instead that the government had simply failed to meet its burden of proof and that Ms. Literski's affidavit and the report of her interview should be rejected as unreliable hearsay. The record thus reflects a strategic decision to forgo further efforts to obtain her actual appearance and to rely on the legal argument we have rejected above.

We recognize that § 1003.35(b)(6) says the judge "shall" request enforcement of the subpoena, but we do not read the regulation as requiring the judge to do so in the absence of a request from a party. The regulation would otherwise impose additional unnecessary and useless delays and burdens on an already overburdened network of immigration courts. Cf. *Malave v. Holder*, 610 F.3d 483, 487–88 (7th Cir. 2010) (remanding where immigration judge refused alien's request for issuance of subpoena to enable cross-examination of ex-husband whose hearsay interview was used to prove marriage fraud).

Vidinski insists, however, that a remand is required under *Karroumeh v. Lynch*, 820 F.3d 890 (7th Cir. 2016), and *Pouhova v. Holder*, 726 F.3d 1007 (7th Cir. 2013). In both cases we granted petitions where immigration judges ruled against aliens on the basis of hearsay evidence. Both cases differ from this one in important ways.

*Karroumeh* also involved marriage fraud and an ex-spouse who provided a sworn statement but did not appear to testify. In *Karroumeh*, however, the government had not properly

subpoenaed the missing ex-wife; a subpoena was prepared, but it was for the wrong date and not even served. 820 F.3d at 897. Even more important, the hearsay statement was "marked by contradictions and inconsistencies that call its reliability into question." *Id*. at 898. There is no comparable reason to doubt the reliability of Ms. Literski's account in this case, particularly where Vidinski himself chose not to testify to rebut it.

The issue in *Pouhova* was not marriage fraud but smuggling of other aliens, yet the government built its case on hearsay. The use of hearsay was unfair in *Pouhova* because there were specific reasons to deem it unreliable. The interview with the key witness was conducted in English because funding shortages meant no interpreter was available, and there was no indication of how well the witness understood or expressed herself in English. 726 F.3d at 1009, 1012. Moreover, the government did not even call the agent who had interviewed the witness, so the agent was not available for cross-examination on topics that might have affected the reliability of the interview. *Id.* at 1015. His written report on the witness was not prepared until seven years after the interview and contradicted it in important details. *Id*. at 1013–14. Further, Ms. Pouhova had testified in her case, *id.* at 1010, unlike Vidinski, who declined the opportunity to testify about any bona fide basis for his marriage to Ms. Literski.

When immigration authorities build their removal cases on hearsay, they venture onto thin ice, as *Karroumeh*, *Pouhova*, *Malave*, and numerous other cases attest. But challenges to such use of hearsay call for close attention to the details of the hearsay and the rest of the evidence in the case. In this case,

the hearsay accounts from Ms. Literski did not contain inconsistencies or improbable details that would call their reliability into doubt, and Vidinski declined the opportunity to rebut those accounts. Under these circumstances, we find no violation of Vidinski's statutory or due process rights. To the extent we have jurisdiction over his petition for review of the order of removal (No. 13-2478), we deny that petition on the merits.

Finally, we consider Vidinski's separate petition for review (No. 13-3263) of the Board's denial of his motion to reopen proceedings based on the ineffectiveness of his counsel in the initial appeal to the Board, a decision we review only for abuse of discretion. See *Patel v. Holder*, 747 F.3d 493, 496 (7th Cir. 2014). The Board found that Vidinski met the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), for claims of ineffective counsel. The Board agreed that Vidinski's counsel in the initial appeal did not perform competently because he filed a brief with "a very limited argument" on Vidinski's behalf. The Board also found, however, that Vidinski had failed to show prejudice because he did not challenge the competence of his (different) counsel before the immigration judge, whose factual findings were not clearly erroneous.

Vidinski argues that prejudice should be presumed under these circumstances, citing *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042 (9th Cir. 2000), and *Dakane v. U.S. Attorney General*, 399 F.3d 1269 (11th Cir. 2004). These cases applied a rebuttable presumption of prejudice where counsel had failed to file an appeal on time (*Volkova*) or failed to file any brief at all (*Dakane*). Vidinski's case, by contrast, was presented to the

Board in a timely appeal, but with only cursory development of an argument.

We assume for purposes of this discussion that a presumption of prejudice might apply where briefing before the Board is truly deficient.[4] But any such presumption has been rebutted in this case. The Board found that Vidinski had failed to show he was prejudiced by the inadequate argument in the initial appeal. The Board noted that the judge had issued a subpoena to Ms. Literski, that she had not appeared, that Vidinski had chosen not to testify and not to present any rebuttal evidence on the marriage fraud issue, and that Vidinski did not claim his counsel was ineffective before the immigration judge. We find no error in the Board's determination that Vidinski was not prejudiced by the initially inadequate briefing. In his motion to reopen proceedings, Vidinski presented the arguments he makes before this court, and the Board reasonably rejected them. We see no basis for ordering the Board to consider the case a third time on the theory that the issues were not adequately presented in the first round.

To sum up, we find no violation of Vidinski's statutory or constitutional rights. The removal proceedings here were fundamentally fair. The stay entered on December 11, 2014 is LIFTED; Vidinski's petition for review in No. 13-2478 is DISMISSED in part for lack of jurisdiction and DENIED on

---

[4] This presumption would differ sharply from, for example, claims of ineffective assistance of counsel in habeas corpus cases under 28 U.S.C. § 2254, where a petitioner must show prejudice. Cf. *Roe v. Flores-Ortega*, 528 U.S. 470, 482–83 (2000) (stating general rule but presuming prejudice where counsel simply fails to file appeal as directed by client).

the merits as to its remainder; and Vidinski's petition for review in No. 13-3263 is DENIED on the merits.