NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2019
Decided October 28, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3413

| | |
|---|---|
| KIRIL VIDINSKI, *Petitioner,* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A096-533-945 |
| WILLIAM P. BARR, Attorney General of the United States, *Respondent.* | |

**O R D E R**

An Immigration Judge found Kiril Vidinski, a citizen of Bulgaria, removable. Despite the fact that the removal order has now been carried out, Vidinski (as is his prerogative) is continuing to pursue his right to stay in the United States. In this action, his third challenge to the removal order, Vidinski argues that his proceedings have been void *ab initio* because they were based on a flawed Notice to Appear. The flaw was the absence of any information about the specific date and time for his hearing, in disregard of the statutory requirement to include that information. See 8 U.S.C. § 1229(a)(1)(G)(i). Those details were supplied later, in a supplemental notice. He also contends that the

Board of Immigration Appeals exceeded its authority by exploring the facts underlying his application for cancellation of removal at the motion-to-reopen stage.

Unfortunately for Vidinski, we recently held in *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), that omission of date-and-time information from a Notice to Appear does not affect the tribunal's jurisdiction. Instead, the requirement to include those details is a claim-processing rule that an alien may waive or forfeit. Vidinski did not timely object to the statutory defects in his notice, nor has he demonstrated that the Board erred by considering his stated factual basis for his latest request for cancellation of removal. We therefore deny his petition for review.

**I**

Vidinski overstayed a 1998 visa that expired the same year. He married a United States citizen in 2002, and in 2005 he applied to the Department of Homeland Security to adjust his status based on the marriage. Yet his tax returns during the marriage said he was single, and in early 2005 his former girlfriend from Bulgaria (who by that time lived in the United States) gave birth to their child.

Although he divorced his citizen wife in 2009, Vidinski's application remained pending until 2010, when immigration officials who were investigating a marriage-fraud ring interviewed her. She admitted that her marriage to Vidinski was a sham, that she had been paid to marry him, and that she had never lived with him. Armed with that information, the agency denied Vidinski's application to adjust his status.

The Department of Homeland Security (DHS) then initiated removal proceedings and filed a Notice to Appear with the immigration court, charging that Vidinski was removable for overstaying his visa, see Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B), and for attempting to procure an immigration benefit by marriage fraud, see § 1227(a)(1)(G)(ii). The notice did not contain the date and time of his hearing, but DHS furnished that information in a later notice. Until *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), this two-step process for setting a date and time was commonplace.

Vidinski admitted that overstaying his visa rendered him eligible for removal under § 1227(a)(1)(B), but he denied committing marriage fraud. Eventually, he also applied for cancellation of removal based on hardship to his United States citizen child—the son of his Bulgarian girlfriend, whom he had married in 2012. See 8 U.S.C. § 1229b(b)(1).

At the removal hearing, the IJ found that the evidence established Vidinski's attempt to obtain an immigration benefit by entering into a fraudulent marriage, and so he was removable under § 1227(a)(1)(A). Indeed, when faced with the government's evidence, Vidinski declined to testify, apparently laboring under the misapprehension that his silence could not be taken against him. See *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154–55 (1923) ("[T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak."). Regarding cancellation based on hardship to Vidinski's child, the IJ concluded that Vidinski had failed to establish his own good moral character or show that his child would suffer exceptional hardship if Vidinski were to return to Bulgaria. Vidinski appealed to the Board, which upheld the IJ's decision.

In 2013 Vidinski filed with the Board a motion to reopen his immigration proceedings based on ineffective assistance of counsel. The Board denied that motion, and it later denied his motion to reconsider that decision.

The litigation continued with Vidinski's consolidated petitions to this court seeking review of both the removal decision and the Board's denial of his first motion to reopen. *Vidinski v. Lynch*, 840 F.3d 912 (7th Cir. 2016). We saw no reason to upset the Board's decision that Vidinski was removable for overstaying his visa. Next, we held that the Board's denial of his request for cancellation of removal based on hardship to his child was a discretionary decision that we lacked jurisdiction to review. *Id.* at 915. We also deferred to the Board's finding that the government had established by clear and convincing evidence that Vidinski's marriage was fraudulent, and that removal on that ground was proper. *Id.* at 916–17. Finally, we saw no error in the Board's dismissal of Vidinski's motion to reopen based on alleged ineffective assistance of counsel. *Id.* at 919.

The petition now before us had its origin in a motion Vidinski filed in August 2018, in which he again asked the Board to reopen or reconsider his case. He argued principally that he was eligible for cancellation of removal under *Pereira*, 138 S. Ct. at 2110. In *Pereira*, the Supreme Court held that a Notice to Appear that fails to designate the time or place of the removal proceedings does not constitute a "notice to appear under section 1229(a)," and therefore does not trigger the statutory "stop-time rule." *Id.* Aliens who have accrued ten years of continuous physical presence in the United States may be eligible for cancellation of removal, see § 1229b(b)(1), but under the stop-time

rule, § 1229b(d)(1)(A), that period of continuous physical presence ends when the alien is served with a Notice to Appear under § 1229(a). See *Pereira*, 138 S. Ct. at 2109.

Reading *Pereira* broadly, Vidinski asserted before the Board that DHS's failure to specify the date and time in his initial Notice to Appear deprives the immigration court of jurisdiction to order removal. He alternatively pleaded with the Board to excuse the time-and-number bars on his motion to reopen as a matter of equity, and to conclude that he was prejudiced by his former counsel's ineffective assistance. He also urged that *Pereira* constituted a fundamental change in law and that the Board should therefore exercise its *sua sponte* authority to reopen his removal proceedings. Finally, he contended that the Board should reopen the proceedings in order to enable him to file another application for cancellation of removal based on harm to a second citizen-child.

The Board denied Vidinski's motion. Citing *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018), it held that a Notice to Appear that does not specify the date and time of the alien's removal hearing suffices to vest an IJ with jurisdiction when, as here, notice of the date and time is later sent to the alien in a separate document. Regarding equitable tolling, the Board concluded that Vidinski had not shown the requisite diligence before filing his latest motion to reopen or reconsider. The Board also determined that Vidinski had failed to demonstrate exceptional circumstances warranting an exercise of its *sua sponte* authority to reopen. Finally, the Board ruled that Vidinski had not made a *prima facie* showing that his removal from the United States would result in hardship to his second child.

Vidinski now petitions for judicial review. He challenges the Board's jurisdictional holding and contends that the Board erred by exploring the facts underlying his application for cancellation of removal at the motion-to-reopen stage. After he filed his opening brief, we rejected a nearly identical jurisdictional challenge in *Ortiz-Santiago*, 924 F.3d at 958.

## II

At oral argument, counsel recognized that *Ortiz-Santiago* poses a major obstacle to Vidinski's petition for review. In that opinion, we thoroughly considered whether the requirement of a precise date, time, and location in § 1229(a)(1)(G)(i) is jurisdictional, in light of both the statutory language and *Pereira.* We concluded that it is not. See 924 F.3d at 958. Instead, we found that this requirement is immigration law's version of a claim-processing rule, the violation of which can be forfeited if an objection is not timely raised. *Id.* Joining the Second, Sixth, and Ninth Circuits—and contradicting none on this

point—*Ortiz-Santiago* held that an IJ's jurisdiction "is secure despite the omission" of the time, date, and place in the Notice to Appear. *Id.* (citing *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019); *Santos-Santos v. Barr*, 917 F.3d 486 (6th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019)).

Because the petitioner in *Ortiz-Santiago* did not contest this feature of his Notice to Appear until after the IJ's decision was under review by the Board, we found that the argument was untimely and therefore forfeited. *Ortiz-Santiago*, 924 F.3d at 964. Vidinski's situation is identical. Indeed, his argument is even more belated than Ortiz-Santiago's. The IJ found him removable in 2012, but he did not challenge the omissions in his initial notice to appear until six years later (August 2018), in his latest motion to reopen or reconsider. Vidinski was not entitled to remain silent when an objection could have been crafted before 2018. See *id.* at 964 (explaining why *Pereira*-like challenge to flawed notice was conceivable by 2016, if not sooner).

Still, *Ortiz-Santiago* holds that relief might be available for those untimely objectors who can show (1) that the untimeliness is excusable, and (2) that prejudice flows from the flawed notice. 924 F.3d at 965. Thus, if Vidinski could show excusable delay in arguing that his Notice to Appear was defective and that he suffered prejudice, he might have a debatable contention. But Vidinski has not made such an argument to either the Board or this court. And he could have done so: although he filed his opening brief here before *Ortiz-Santiago* was decided, his reply brief was filed ten days after the decision yet does not mention it.

Vidinski does argue, however, that the date-and-time requirements are "mandatory" and therefore must be enforced by this court. True, the information that must be included in a Notice to Appear may be a mandatory claim-processing requirement. But claim-processing rules, even if "mandatory," must be enforced only when a party properly raises them. *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017). If not timely raised, arguments based on violations of that type of requirement can be forfeited. *Ortiz-Santiago*, 924 F.3d at 958. That is the situation in which Vidinski finds himself: although he raised other challenges to his Notice to Appear, he never alerted the IJ even generally to the date-and-time argument, and so he has forfeited it.

For what it is worth, it is far from clear that Vidinski could establish excusable neglect. He would need to overcome the fact that he could have argued to the IJ that, based on the plain language of § 1229(a)(1)(G)(i), his Notice to Appear was defective. See *Ortiz-Santiago*, 924 F.3d at 964. Moreover, *Orozco-Velasquez v. Attorney General United States*, 817 F.3d 78 (3d Cir. 2016)—holding that a deficient Notice to Appear does not

trigger the stop-time rule—was published in 2016, and nothing in the record suggests that Vidinski was prevented from citing that case well before his 2018 motion to reopen or reconsider. See *Ortiz-Santiago*, 924 F.3d at 964.

It is also unlikely that Vidinski could establish prejudice. He received his Notice to Appear and contested the charge of removability. He then received a separate notice furnishing the date and time of his removal proceedings. He attended the hearing, was represented by a lawyer, disputed the charge of removability, and argued for cancellation of removal based on harm to his citizen child (albeit without testifying). In short, Vidinski received the formal (though somewhat incomplete) notice, had time to prepare for his hearing, and was not otherwise prejudiced by the omissions in his initial notice. See *Ortiz-Santiago*, 924 F.3d at 964–65. (His arguments based on his allegedly ineffective lawyer rest on a different legal theory and thus do not help him here.)

Finally, Vidinski argues that the Board committed an error of law when it held that he failed to demonstrate a *prima facie* case of hardship-based eligibility for withholding of removal. According to him, the Board impermissibly engaged in fact-finding and should have instead remanded his case for the IJ to determine whether his son would suffer the requisite hardship. But longstanding precedent holds that the Board may deny a motion to reopen because "the movant has not established a *prima facie* case for the underlying substantive relief sought." *INS v. Abudu*, 485 U.S. 94, 104 (1988); *Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011). That is what happened here. We see no abuse of discretion in the Board's decision to deny his time- and number-barred motion to reopen, to the extent we have jurisdiction at all to review it.

We DENY Vidinski's petition for review.