In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1626

YOUNG DONG KIM,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States

*Respondent.*

On Petition for Review of a Final Order of
the Board of Immigration Appeals.
A099 061 763.

ARGUED NOVEMBER 1, 2012 — DECIDED DECEMBER 16, 2013

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

ROVNER, *Circuit Judge.* Young Dong Kim petitions for
review of a final order of removal issued by the Board of
Immigration Appeals ("BIA" or "Board"). The Board deter-
mined that Kim was ineligible to adjust his status to that of
lawful permanent resident because he failed to maintain

continuous lawful nonimmigrant status prior to applying for adjustment. We conclude that Kim's petition must be denied.

**I.**

Kim, his wife Jung O. Ko, and their two children are citizens of South Korea who were admitted to the United States on August 6, 2003, as nonimmigrant visitors for pleasure. Their B-2 visas allowed them to remain in the United States until February 2, 2004. They received an extension of this temporary period until August 2, 2004. On April 21, 2004, Kim's wife, Ko, applied to change her status to that of a nonimmigrant student and her F-1 visa was granted on June 28, 2004. As a beneficiary of his wife's application, Kim's status was changed to that of the spouse of a nonimmigrant student, also known as F-2 status. Kim's F-2 status was valid so long as his wife maintained her F-1 status.[1]

On January 16, 2006, Ko's F-1 status and, consequently, Kim's F-2 status, were terminated for reasons that will become apparent below. On May 9, 2006, Ko applied to reinstate her F-1 status with the United States Citizenship and Immigration Services ("USCIS"). On June 5, 2006, USCIS denied Ko's application. Citing 8 C.F.R. § 214.2(f)(16), the Acting District Director explained:

---

[1] At that time, Kim's status and that of his children depended on Ko's status as a student. After Kim applied for adjustment of status, his case was consolidated with those of his wife and children in the agency below. The BIA's final order of removal applied to Kim, Ko and their children, and our ruling on Kim's petition also applies to the entire family.

>You are deemed ineligible to file for a reinstatement of status to F-1 because you failed to establish to the satisfaction of the Service, that the violation of status resulted from circumstances beyond your control. You claimed that your failure to maintain your F[-]1 status was caused by circumstances beyond your control because of a serious illness. The letter from your doctor shows that you had been under his care starting December 17, 2005 through January 13, 2006. On June 2, 2006, your previous school was contacted and informed the Service that you stopped attending classes starting November 6, 2005. The school also stated that they do not know the reason why you stopped attending your classes. You have failed to inform your school DSO about your illness and as a result, your status was terminated by Goal Training, Inc. due to subject failure/s. Therefore, there is no other alternative than to deny the application for reinstatement.

Administrative Record ("A.R.") at 292-93.[2]

---

[2] A "DSO" is a "Designated School Official." In order for a school to be certified for the Student and Exchange Visitor Program ("SEVP"), the school must have dedicated employees for assisting and overseeing enrolled students holding F and M visas. DSOs must have an office at the school and be accessible to the F and/or M students at their school. They must also update and maintain student records in the Student and Exchange Visitor Information System ("SEVIS"). *See* 8 C.F.R. § 214.3(l); http://studyinthestates.dhs.gov/schools/dso (last visited November 8, 2013).

On July 7, 2006, Ko filed a motion to reopen or reconsider the June 5, 2006 decision. The District Director denied Ko's motion on May 15, 2008:

> The motion allegedly indicates that the student, Jung O. Kim, has not been out of status for more than 5 months at the time of filing the request for reinstatement. To reiterate, the previous DSO, Tatiana Hamilton, was contacted on June 2, 2006. She stated that the student stopped attending her classes starting November 6, 2005. Additionally, the DSO stated that the school was never informed of the reason why the student stopped attending her classes and as a result, her status was terminated by Goal Training, Inc. Further, on April 15, 2008, the new DSO of Goal Training, Inc., Helen Andrusik, was contacted. Ms. Andrusik confirmed that the information provided by the previous DSO's [sic] is highly accurate. She also stated that the student[']s failing grades are likely caused by the attendance problems. Therefore, based on these facts, it was concluded that you fell out of status for over 5 months before your request for reinstatement was filed.

A.R. at 294-95.

While Ko's motion to reopen or reconsider was still pending, Kim became the beneficiary of an approved immigrant visa petition for an alien worker, also known as a Form I-140 visa petition. In August 2007, Kim moved to adjust his status to that of lawful permanent resident based on his

approved I-140 visa petition. In July 2009, the USCIS denied Kim's application to adjust his status, finding that he was ineligible because he had failed to maintain continuous lawful status since entering the United States. In particular, the USCIS noted that Kim's F-2 status was terminated in January 2006 when Ko lost her F-1 status. And, of course, Ko's request for reinstatement of student status had been denied on June 5, 2006. Because Kim had failed to maintain lawful status for more than 180 days before applying to adjust his status, the USCIS deemed him ineligible to adjust his status under 8 U.S.C. § 1255(I). *See also* 8 U.S.C. § 1255(k)(2).

In October 2009, the Department of Homeland Security ("DHS") issued Kim a Notice to Appear, charging him with being removable because he had overstayed his visa. *See* 8 U.S.C. § 1227(a)(1)(B). At a May 20, 2010 hearing before an immigration judge ("IJ"), Kim acknowledged that he was admitted to the United States on August 6, 2003 as a non-immigrant B-2 visitor, that he was granted F-2 status on June 29, 2004, and that his F-2 status was terminated on January 16, 2006. But he denied that he remained in the United States without authorization after that date and denied that he was removable as charged. At this hearing and at another hearing in August 2010, Ko testified regarding the circumstances of the termination of her student status. Ko said that she stopped attending classes in February 2006 after the school wrongfully terminated her status for non-payment of tuition. She also testified that she became ill in January 2006 and could not attend school for that reason. Kim argued that his failure to maintain legal status from January 2006 through May 2008 was due to circumstances beyond his control and should be

excused for that reason. He also maintained that his failure to maintain legal status was due to technical reasons, a failure which could also be legally excused.

The IJ found Kim removable and determined that he was ineligible for adjustment of status. Noting that Kim's F-2 status terminated on January 16, 2006, the IJ found that Kim's status was not reinstated or extended at any time by the DHS, and thus he had not maintained continuous lawful status as required. The IJ rejected Kim's argument that Ko was dropped from the school register for technical reasons or through no fault of her own, and that the USCIS should have reinstated her. The IJ noted that he lacked the authority to reinstate Ko's student status because the decision was within the sole discretion of the USCIS. Moreover, the IJ determined that Ko did not maintain her status during the time she was seeking reopening or reconsideration of the initial decision, distinguishing her case from that of *In re L-K*, 23 I&N Dec. 677 (BIA 2004). The IJ also concluded that the circumstances presented did not fall within the "technical reasons" exception that Kim sought to apply. 8 U.S.C. § 1255(c) and (k). Because Kim's status was dependent on that of Ko, Kim was therefore subject to removal as charged. In addition to being removable as charged, Kim was not eligible for adjustment of status due to his failure to continuously maintain lawful nonimmigrant status. The IJ granted Kim, Ko and their children voluntary departure.

Kim filed a timely appeal to the BIA, arguing that the termination of his lawful status in January 2006 was improper, and that his failure to maintain legal status was due to excusable technical reasons. The BIA dismissed the appeal. The

Board noted that neither the IJ nor the BIA have the authority to review the decision by USCIS denying Ko's application to reinstate her student status. The BIA also agreed with the IJ that Ko and Kim's failure to maintain lawful status could not be characterized as being through no fault of their own or for technical reasons under 8 U.S.C. § 1255(c)(2) and 8 C.F.R. § 1245.1(d)(2). Accordingly, the BIA concluded that Kim was ineligible to adjust his status, and the appeal was dismissed. Kim now petitions for review of the Board's order.

## II.

In his petition for review, Kim contends that the BIA's review should have included consideration of a June 17, 2011 Memorandum issued by the Director of U.S. Immigration and Customs Enforcement ("ICE") setting forth guidance on the exercise of prosecutorial discretion. He also contends that the BIA erred when it agreed with the IJ's findings because the findings of the IJ and USCIS were in conflict. A more thorough review of the facts, Kim argues, would reveal that the DSO made a mistake and that Ko's status was terminated through no fault of her own.

"When the Board agrees with the decision of the immigration judge, adopts that decision and supplements that decision with its own reasoning, as it did here, we review the immigration judge's decision as supplemented by the Board." *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (*en banc*). We review the findings of fact for substantial evidence and reverse only if the evidence compels a different result. *Cece*, 733 F.3d at 675-76. We review questions of law *de novo*, deferring to the Board's reasonable interpretation set forth in precedential opinions

interpreting the statute. *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Cece*, 733 F.3d at 668-69.

**A.**

In June 2011, the ICE Director issued a Memorandum setting forth guidance on the exercise of prosecutorial discretion in immigration enforcement actions. *See* www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf (last visited Nov. 22, 2013) (hereafter "Memorandum"). The Memorandum acknowledged that ICE has limited resources to remove those who are in the United States illegally, and that the agency should therefore use its resources to ensure that enforcement priorities are met. In particular, the Memorandum specified that the agency's limited resources should be used to promote national security, border security, public safety, and the integrity of the immigration system. In civil immigration enforcement actions, the Memorandum encouraged authorized ICE personnel to exercise prosecutorial discretion in a manner that promoted the stated goals. The Memorandum defined the broad range of enforcement decisions to which this discretion could be applied, set forth the particular agency personnel authorized to exercise that discretion, and provided an extensive list of factors to consider in exercising prosecutorial discretion.

Kim first faults the BIA for failing to consider the issue of prosecutorial discretion. Citing 8 U.S.C. § 1252(d)(1), the government contends that we should not reach this issue because Kim failed to raise it before the Board. But section 1252(d)(1) applies to the exhaustion of "administrative remedies available

to the alien as of right," and the Memorandum, by its own terms, does not "create any right or benefit, substantive or procedural, endorsable at law by any party in any administrative, civil or criminal matter." Memorandum, at 6. *See also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right"). Moreover, the Memorandum by its terms allows for an exercise of prosecutorial discretion at virtually any stage of a removal action, including on appeal.

But there are at least two other reasons that Kim's claim for an exercise of prosecutorial discretion by the BIA must fail. First, the BIA does not possess the prosecutorial discretion detailed in the Memorandum. *See* 8 C.F.R. § 1003.1(b) and (d) (setting forth the appellate jurisdiction of the BIA and the Board's powers generally). Indeed, the Memorandum itself lists the ICE employees who possess prosecutorial discretion and the members of the Board are not among those listed. Memorandum, at 3. Second, exercises of prosecutorial discretion by the DHS generally are immune from judicial review. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482-92 (1999). *See also* 8 U.S.C. § 1252(g) ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").

As the Supreme Court noted:

There was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the Attorney General's discrete acts of "commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders"-which represent the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience.

*American-Arab Anti-Discrimination Committee*, 525 U.S. at 483-84. Whether to exercise the prosecutorial discretion outlined in the Memorandum plainly comes within the purview of section 1252(g) and the Supreme Court's decision in the *American-Arab Anti-Discrimination Committee* case. We therefore lack jurisdiction to review this claim.

**B.**

The USCIS found that Ko stopped attending school on November 6, 2005, and that she failed to inform the DSO why she stopped attending classes. Ko claimed that she stopped coming to class because of a serious illness but the USCIS rejected this explanation because a letter from her doctor demonstrated that she was under his care from December 17, 2005 through January 13, 2006, a period that began approximately five weeks after Ko stopped attending classes. The IJ found that Ko's non-immigrant student status was terminated

"on or about January 16, 2006," which resulted in Kim losing his derivative status as well. The BIA agreed with this finding. In his petition for review, Kim contends that the finding by the USCIS that Ko stopped attending school in November 2005 was in error. Kim asserts that he provided documentary evidence that Ko was in class through January 2006 and that the DSO simply made a mistake. Kim also points out that the IJ found that Ko attended classes until January 2006, a finding that conflicts with that of the USCIS conclusion that Ko stopped attending classes on November 6, 2005. In light of this discrepancy, Kim argues that the BIA should not have deferred to the fact-findings of the IJ but should have independently reviewed the record and concluded that Ko lost her student status through no fault of her own, due to an error by the school's DSO. Because Ko lost status through no fault of her own, Kim argues that he remained eligible to adjust his status based on his approved I-140 visa petition.

An alien may be eligible for adjustment of status "by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). However, an alien who "is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States" is not eligible for adjustment

of status. 8 U.S.C. § 1255(c)(2). For immigrants seeking an employment-based adjustment of status, as Kim was seeking here, the statute provides an exception to the requirement of continuous lawful status if the "alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days—(A) failed to maintain, continuously, a lawful status; (B) engaged in unauthorized employment; or (C) otherwise violated the terms and conditions of the alien's admission." 8 U.S.C. § 1255(k).

Kim's lawful status was terminated as of January 16, 2006 at the latest, when Ko lost her student status. Kim does not dispute that USCIS denied Ko's motion to reinstate her student status on June 5, 2006. Kim filed his application for an adjustment of status more than a year later, in August 2007. The record indisputably establishes, therefore, that Kim was out of lawful status for more than 180 days prior to filing his application to adjust his status.

That failure to maintain lawful status could be excused if Kim could demonstrate that it occurred through no fault of his own or that it was due to technical reasons. 8 U.S.C. § 1255(c)(2); 8 C.F.R. § 1245.1(d)(2). The regulation clearly spells out what is meant by "fault" and "technical reasons." In relevant part, the regulation states:

> No fault of the applicant or for technical reasons. The parenthetical phrase other than through no fault of his or her own or for technical reasons shall be limited to:
>
> (I) Inaction of another individual or organization designated by regulation to act on behalf of an

individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization (as, for example, where a designated school official certified under § 214.2(f) of 8 CFR chapter I or an exchange program sponsor under § 214.2(j) of 8 CFR chapter I did not provide required notification to the Service of continuation of status, or did not forward a request for continuation of status to the Service); or

(ii) A technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request). An individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason.

8 C.F.R. § 1245.1(d)(2). Neither provision could alter the outcome here. Even if Ko's motion to reinstate her student status was a timely filed request to maintain status within the meaning of 8 C.F.R. § 1245.1(d)(2)(ii), DHS took action by denying her request on June 5, 2006. Yet Kim did not file his request to adjust his status until August 2007, more than one year later and well beyond the 180 day limit. And Kim did not raise section 1245.1(d)(2)(I) until he filed this petition for review, failing to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1). A failure to exhaust "usually forecloses a petitioner from raising an issue in federal court that was not raised before the immigration tribunal." *Arobelidze v. Holder*,

653 F.3d 513, 517 (7th Cir. 2011). No exception to that general rule applies in this instance.

Finally, there is no real discrepancy between the findings of the USCIS and the IJ. The USCIS determined that Ko stopped attending classes in November 2005, and her F-1 student status was terminated on January 16, 2006. As Ko's spouse, Kim's F-2 status terminated that same day. The IJ found that Ko's student status was terminated "on or about January 16, 2006." The IJ also remarked that "Ko dropped out of school in January of 2006." Any discrepancy about the date would not matter in any case because neither the IJ nor the BIA may review the USCIS's discretionary denial of a motion to reinstate student status. *See* 8 C.F.R. § 214.2(f)(16)(ii) ("if the Service does not reinstate the student, the student may not appeal that decision."). *See also In re Yazdani*, 17 I&N Dec. 626, 628 (BIA 1981) ("The power, however, to reinstate student status or grant an extension of nonimmigrant stay lies within the exclusive jurisdiction of the District Director and neither the immigration judge nor the Board may review the propriety of the District Director's determinations."). Because the IJ and the Board had no authority to review the USCIS's reasons for denying reinstatement, the asserted discrepancy between the findings of the USCIS and the IJ are irrelevant to Kim's petition for review. Moreover, when Ko moved for reinstatement, she failed to demonstrate that she met the remaining requirements for reinstatement, including the requirement that the DSO submit a form recommending reinstatement. *See* 8 C.F.R. § 214.2(f)(16)(I). Kim offers no evidence in his petition that Ko met that additional requirement, and any error related to the

date that Ko's status was terminated could not affect the outcome here. The petition for review is therefore

DISMISSED IN PART AND DENIED IN PART.