NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 28, 2014
Decided March 4, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-2105

SHENG EN LIU,
    *Petitioner*,

    *v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,
    *Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.

No. A088-784-797

**ORDER**

Sheng En Liu, a Chinese citizen, applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) on the basis of his resistance to China's family planning policies and his practice of Falun Gong. An immigration judge denied relief, and the Board of Immigration Appeals upheld that decision. Because Liu's evidence of past persecution for opposing family planning policies is vague, and his

evidence that Chinese authorities will target his Falun Gong activities is weak, we deny the petition for review.

## Background

Liu unlawfully entered the United States in February 2008. The Department of Homeland Security initiated removal proceedings the following month, alleging that he did not possess a valid entry document at the time of his entry, see 8 U.S.C. § 1182(a)(7)(A)(i)(I). Liu conceded the charge of removability and applied for asylum, withholding of removal, and relief under CAT based on his resistance to China's family planning policies, see 8 U.S.C. § 1101(a)(42)(B). While his removal proceedings were pending, Liu began practicing Falun Gong and then amended his request for relief, adding that he feared persecution in China on account of his Falun Gong activities.

At his removal hearing Liu, who is from Fujian Province, China, testified that he has been accused of violating his country's family planning policies. In 2007, when he was 19 years old, Liu's fiancée became pregnant. In China, a pregnancy before marriage violates the family planning rules, and the couple could not marry because they had yet to reach the legal marital age. In November of that year, family planning officials came to Liu's home and asked for the couple's marriage certificate and birth permit. After Liu told them that the couple planned to marry when they reached the legal age, the officials accused Liu and his fiancée of violating China's family planning policies.

What happened next constitutes the basis of Liu's claim that he suffered past persecuted for opposing the family planning policies. One of the officials touched his fiancée's shoulder, and Liu thought the official was going to push her out of the house. He began yelling at the official, pushed the official's arm away, and stood between his fiancée and the official. The other officials responded by accusing him of hitting the official. Four officials then kicked him and struck him with a "wooden stick" on his head, back, and legs, producing "wounds." His parents and neighbors heard the commotion and came to Liu's aid, trying to keep the officials back while he escaped through a window.

Liu remained in China for another six weeks before fleeing the country. He first went to a neighboring village where he stayed with his aunt for ten days. His aunt treated his wounds. He did not seek other medical treatment, he testified, out of fear that family planning officials would find him; he did not say what treatment he needed and admitted that he would likely not have been recognized in that village. While he

was in hiding, he testified, family planning officials visited his parents' home several times demanding his surrender; they also forced his fiancée to undergo an abortion. Liu next traveled to a city an hour away from his home and stayed with his father's friend for a month, without attracting the attention of authorities, before fleeing China in December 2007. Liu kept in touch with his fiancée for two years after he left China and asked her to submit a statement confirming the beating and forced abortion, but he testified that she refused because she did not want to revisit the incident.

After he entered the United States and removal proceedings began, Liu started practicing Falun Gong. He testified that he picked up a Falun Gong flyer on the street and decided to try the exercises because he was in poor health. Liu explained that he practiced Falun Gong three or four times per week inside his home. He also presented photos depicting him distributing flyers that promote Falun Gong. If he returns to China, Liu stated, he will continue practicing Falun Gong, and he fears that Chinese officials will arrest and jail him for his activities. He furnished a letter from his sister, who asserts in one unelaborated sentence that the Chinese officials know of his Falun Gong activities in the United States, but he told the IJ he does not know if that is true.

The IJ rejected Liu's requests for relief from removal, focusing first on his claim based on his resistance to family planning policies. Although the IJ credited Liu's testimony in general, the IJ disbelieved Liu's description of the November 2007 encounter with family planning officials in China. The IJ reasoned that Liu presented no corroborating evidence and his testimony contradicted the State Department's description of China's official penalties for violating family planning policies. Alternatively, the IJ concluded that the beating Liu described did not rise to the level of persecution or torture, and so he could not demonstrate past persecution on account of his resistance to China's family planning policies. The IJ also concluded that Liu had not demonstrated his eligibility for asylum on account of his Falun Gong activities because Liu did not show that the Chinese government knew or would learn of his practices.

The Board dismissed Liu's administrative appeal. In discussing the beating that Liu testified he received for opposing the family planning policies, the Board rejected the IJ's adverse credibility finding. But it agreed with the IJ that the beating did not constitute persecution. The Board also ruled that the evidence did not establish that Liu has an objectively reasonable basis for fearing persecution in China on account of his Falun Gong activities. It observed (as the IJ had not) that the letter submitted by Liu's sister asserts that the Chinese government is aware of Liu's activities. But it gave the letter "little weight" because it was unauthenticated, uncorroborated, and written by an

interested party for the purpose of the hearing. Moreover, Liu himself had testified that he did not know whether the Chinese government was aware of his Falun Gong activities. Finally the Board reasoned that Liu had not testified that he would practice Falun Gong in China if he returns. (This is partially incorrect: Liu had testified that he would practice Falun Gong in China, but he did not testify whether he wanted to practice publicly.) The Board therefore denied relief from removal.

**Analysis**

Liu contests the decisions to deny him relief from removal. We review the decisions of the IJ as supplemented by the Board because the Board adopted the IJ's decision but also added its own analysis. See *Munoz-Avila v. Holder,* 716 F.3d 976, 978 (7th Cir. 2013); *Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009). If the IJ's decision, as supplemented by the Board, is supported by substantial evidence we will affirm; reversal is warranted only if the evidence compels a different result. See *Cece v. Holder*, 733 F.3d 662, 675–76 (7th Cir. 2013) (en banc); *Young Dong Kim v. Holder*, 737 F.3d 1181, 1184 (7th Cir. 2013).

Liu first challenges the Board's conclusion that the beating he received from the Chinese family planning authorities was not persecution. Persecution requires the application of "*significant* physical force against a person's body, . . . the infliction of comparable physical harm without direct application of force," or the infliction of "nonphysical harm of equal gravity." *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011) (emphasis in original). We have recognized that even one attack may constitute persecution. See *Asani v. INS*, 154 F.3d 719, 725 (7th Cir. 1998); *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997). But the force used or the resulting harm must reflect severe abuse. See *Mekhtiev v. Holder*, 559 F.3d 725, 730 (7th Cir. 2009) (concluding that injuries from detention and beating that required only stitches were not sufficiently severe to compel conclusion of past persecution); *Zhu v. Gonzales*, 465 F.3d 316, 319 (7th Cir. 2006) (same). Moreover where the record contains no corroboration of the alien's story, the alien must supply the specifics about the force used or injuries sustained because "it is the details that reveal the severity of the particular situation." *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir. 2004); see also *Mitondo v. Mukasey*, 523 F.3d 784, 789 (7th Cir. 2008) (stating that in the absence of documentary proof, courts must use details that alien provides to evaluate alien's story); *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003) (concluding that, although petitioner suffered temporary facial swelling, he did not provide enough other specifics about the three-day detention and beatings to compel finding of past persecution).

Any details that might illuminate the severity of the force used against Liu or the harm inflicted on him are absent from this record. Liu stated only that he was kicked and hit with a wooden stick and that his aunt applied medicine to his wounds. He did not specify how long he was beaten (seconds versus minutes or longer), the size of the stick used (small and light, like a stirring spoon or large and heavy, like a baseball bat), or the injuries incurred (temporary bruises versus permanent damage or broken bones). True, during redirect examination Liu's counsel attempted to elicit more details about his injuries, and the IJ cut off the questioning. But Liu did not contest this ruling in his appeal to the Board, so it is waived, limiting Liu to the evidence in the record. See 8 U.S.C. § 1252(d)(1); *Zeqiri v. Mukasey*, 529 F.3d 364, 369 (7th Cir. 2008). Because the evidence Liu submitted does not specify the severity of the force used and the harm he suffered, it does not compel a finding that Liu had suffered past persecution. And since Liu did not demonstrate past persecution, he is not entitled to a presumption of future persecution. See 8 C.F.R. § 208.13(b)(1).

Liu next asserts that the IJ and the Board wrongly concluded that he could not establish a well-founded fear of future persecution based on his Falun Gong activities in the United States. The parties do not dispute that a Falun Gong practitioner can qualify for asylum or that Liu is a bona fide Falun Gong practitioner. The only issue is whether the Board was compelled to conclude that Liu's fear of future persecution is objectively reasonable. Liu argues that his testimony that he would continue practicing Falun Gong in China, coupled with his sister's letter stating that the Chinese government knew he was practicing Falun Gong in the United States, compels a finding of an objective basis for fearing persecution if returned.

Liu's evidence does not compel the conclusion that he has an objectively reasonable fear of future persecution. Although Liu testified that he plans to continue practicing Falun Gong in China, he did not say whether he wants to promote the exercises in public or practice just within his home (as he does in the United States). Without evidence showing that Liu would like to advance the practice openly in China, attracting publicity and possibly the authorities' attention, the record does not require a conclusion that Chinese officials will learn about his activities. See *Yi Xian Chen v. Holder*, 705 F.3d 624, 630 (7th Cir. 2013) (concluding that petitioner's testimony that he planned to practice Falun Gong on land adjacent to house did not compel conclusion that Chinese authorities would find out).

Liu counters that he does not need evidence that he plans to practice openly because his sister's letter, which he argues the Board erroneously dismissed, asserts that

the Chinese officials already know that he practices Falun Gong in the United States. The Board gave several reasons for concluding that the sister's one-sentence assertion is unreliable: it is unauthenticated, uncorroborated, written by an interested party for Liu's asylum hearing, and contradicted by Liu's own testimony. Although letters from family members prepared for a hearing need not be authenticated under 8 C.F.R. § 1287.6, see *Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 (7th Cir. 2007), the Board's other reasons for rejecting the letter are sound: It is written by a relative interested in the outcome of Liu's removal proceedings, it is inconsistent with Liu's testimony, and, further, it does not explain how the Chinese government discovered Liu's activities half a world away. See *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) (recognizing that letters from family "can hardly be thought neutral, reliable sources."); *Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 215–16 (BIA 2010), remanded on other grounds by *Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). Liu replies that, even if the Chinese officials do not yet know of his activities, his photos showing him distributing Falun Gong flyers in the United States will eventually alert them. But he does not explain what in the record shows how, if he does not desire publicity in China, the photos will come their way. Accordingly the Board permissibly rejected Liu's claim of future persecution and, therefore, properly denied his application for asylum.

Because Liu did not meet his burden of proof to establish eligibility for asylum, "it necessarily follows that he cannot make the more stringent showing required to prove" that he is eligible for withholding of removal. *Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008) (internal citation and quotation marks omitted). And since he could not establish that his Falun Gong activities would attract the attention of Chinese authorities, Liu cannot demonstrate that authorities would torture him for practicing Falun Gong. See *Zhu*, 465 F.3d at 322. The agency therefore did not erroneously deny his request for relief under CAT.

The petition for review is DENIED.