In the
# United States Court of Appeals
### For the Seventh Circuit

---

Nos. 12-3641, 13-1228, 13-1895 & 13-2737

RAUL ANTIA-PEREA,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES

*Respondent.*

---

On Petitions for Review of Final Orders
of the Board of Immigration Appeals.
No. A200 837 198

---

ARGUED APRIL 25, 2014 — DECIDED SEPTEMBER 25, 2014

---

Before KANNE and ROVNER, *Circuit Judges*, and DOW,
*District Judge*.[*]

---

[*] The Honorable Robert M. Dow, Jr., of the Northern District of Illinois,
sitting by designation.

DOW, *District Judge*. According to the Form I-213 that the Department of Homeland Security ("DHS" or "the Government") presented at his removal hearing, Petitioner Raul Antia-Perea is a native and citizen of Colombia who was not properly admitted to the United States. Antia-Perea sought to subpoena the DHS agent who prepared the I-213 but did not otherwise challenge the contents of the I-213 or present any evidence in his own behalf at the removal stage of the proceedings. An immigration judge ("IJ") denied Antia-Perea's subpoena request, and, relying on the I-213, found him removable to Colombia. The IJ also denied Antia-Perea's request for a six-month continuance to seek a gubernatorial pardon and found him ineligible for cancellation of removal. The Board of Immigration Appeals ("BIA" or "Board") affirmed the IJ's decision and later denied Antia-Perea's motion for reconsideration. The BIA subsequently denied Antia-Perea's motion to reopen, as well as his request for reconsideration of that ruling.

Antia-Perea now seeks relief from all four of the BIA's decisions in this consolidated petition for review. Antia-Perea contends that the IJ wrongfully denied his requests to subpoena and cross-examine the DHS agent who prepared the I-213, improperly concluded that the Government could and did satisfy its burden of proving alienage with documentary evidence alone, and erroneously denied his request for a continuance to seek a pardon. Antia-Perea further submits that the IJ was biased against him and that the BIA erred in denying his motion to reopen and in denying his motion to reconsider that ruling. Because we conclude that none of the challenged rulings by the IJ or BIA was erroneous, we deny the consolidated petition for review.

**I.**

**A.    Removal Proceedings.** DHS initiated removal proceedings against Antia-Perea on August 20, 2010 by serving him with a Notice to Appear ("NTA"). The NTA alleged that Antia-Perea was a citizen and native of Colombia who had entered the United States at an unknown place and time without being admitted or paroled by an immigration officer. It charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. The NTA further alleged that Antia-Perea had been convicted of "indecent liberties with a child," a crime of moral turpitude, and charged him with removability on that basis as well. See 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Antia-Perea appeared pro se before an IJ twice before he retained counsel. The only substantive occurrence at those hearings was that the Government filed and tendered to Antia-Perea "several documents in this case pertaining to allegations in the Notice to Appear." Those documents included a copy of a Form I-213, a "Record of Deportable/Inadmissible Alien" prepared by DHS "that is typically a record of an immigration inspector's conversation with an alien who will probably be subject to removal." *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013). The I-213 stated that Antia-Perea came into DHS custody on August 20, 2010, and at that time "voluntarily admitted" to DHS agent Yesenia Ochoa that he was not a citizen or national of the United States. According to the I-213, Antia-Perea was "a native and citizen of Colombia" and "ma[d]e[] no claim to United States citizenship." The documents tendered to Antia-Perea also included a Chicago Police

Department "rap sheet," and a "newer iClear Rap Sheet." Both rap sheets indicated that Antia-Perea was born in Puerto Rico.

Antia-Perea eventually retained counsel, who sought and received two continuances to review the documents, make Freedom of Information Act requests, and generally get up to speed with the case. The matter was reassigned to a different IJ, and Antia-Perea and counsel appeared before the new IJ on May 24, 2011. On the advice of counsel, Antia-Perea declined to admit or deny the NTA's allegations against him. Antia-Perea further declined to designate Colombia as the country of removal. He requested that the Government be put to its burden of proving his alienage and removability. Antia-Perea also asked that "the Government be put to its burden of proving removability before we get to the relief stage." The IJ granted these requests and scheduled the matter for a contested hearing on the issue of removability. However, the IJ denied Antia-Perea's request "for subpoenas for the makers of any and all Government documents that are coming in." The IJ advised Antia-Perea that this request was "too broad" and told him that he would "have to identify what it is that you're seeking and specify the nature of the request." The IJ directed the Government to serve counsel with the documents it planned to use no later than 15 days before the contested hearing, which was set for June 28, 2011. The IJ also directed the Government to have all of its witnesses available for the hearing so that the case could proceed in an orderly fashion.

At the contested hearing, the Government called Antia-Perea as its sole witness. Antia-Perea refused to answer any of the Government's questions. In light of Antia-Perea's

silence, the Government requested that the IJ make a finding of removability on the documentary evidence it had submitted: the I-213, the rap sheets, and a few other documents pertaining to Antia-Perea's convictions. The Government argued that the I-213 "establishes that he did advise an Immigration Officer that he's a native and citizen of Colombia." The Government did not call to the IJ's attention the discrepancy between the I-213, which reported Colombia as Antia-Perea's birthplace, and the rap sheets, which identified Puerto Rico as Antia-Perea's birthplace. Neither did Antia-Perea or his counsel.

Instead, Antia-Perea's counsel advised the IJ that Antia-Perea refused to testify as to the authenticity or the accuracy of the I-213 and reiterated his request to subpoena the preparer of that and the Government's other documents. The IJ again denied the request as overly broad. The IJ also denied Antia-Perea's request to cross-examine the preparer of the I-213, rejecting Antia-Perea's contention that he had a right to do so under *Malave v. Holder*, 610 F.3d 483 (7th Cir. 2010), and 8 U.S.C. § 1229a(b)(4)(B). The IJ further rejected Antia-Perea's challenge to the Government's failure to produce any witnesses aside from Antia-Perea himself. The IJ explained that the Government "does not have to present any witness to establish removability. They could do it solely from documentary evidence." The IJ gave Antia-Perea an opportunity to "challeng[e] the documentary evidence, through testimony or affidavits or something else" on rebuttal, but Antia-Perea declined. He expressly stated that he objected to the use of the I-213 solely on the ground that "we're not being permitted to cross-examine the maker of this document."

Ultimately, the IJ concluded that the I-213 was a reliable document that "clearly establishe[d] the respondent's alienage" and that Antia-Perea failed to show that "the time, manner, and place of his entry" were such that his presence in the United States was authorized. The IJ therefore found that Antia-Perea was removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). At the same time, the IJ concluded that the Government's evidence was insufficient to establish removability on the NTA's second charge. The IJ did not address the fact that the rap sheets listed Puerto Rico as Antia-Perea's birthplace. Neither did counsel for either side.

Antia-Perea's counsel did request a continuance to file various requests for relief from removability and an application for cancellation of removal. The IJ granted this request over the Government's objection to allow Antia-Perea to "file any applications that you want me to consider in your case." The IJ set the matter for a hearing on September 13, 2011.

At the September 13 hearing, Antia-Perea submitted an application for cancellation of removal, on which he left unanswered the questions about his birthplace, nationality, current citizenship, and his entry into the United States. Counsel indicated that Antia-Perea "would refer to the record that was submitted previously by the Government." Counsel also informed the IJ that Antia-Perea's son, then a student at John Marshall Law School, was preparing documentation "seeking a pardon of the things that would bar, perhaps statutorily, Mr. Antia from receiving cancellation." Counsel asked the IJ for a six-month continuance "for us to try to obtain a pardon from the

governor, expressing to the governor the need for urgency here."

Antia-Perea "respectfully refus[ed]" to answer the IJ's questions about his application for cancellation of removal. Counsel told the IJ that he believed that Antia-Perea could establish a prima facie case for relief without testifying. The IJ disagreed. The IJ addressed Antia-Perea directly and told him that his application for cancellation of removal was inadequate in its present state. The IJ also advised Antia-Perea that he as the applicant for cancellation of removal bore the burden of showing an entitlement to relief. The IJ gave Antia-Perea a one-week continuance to discuss the matter with counsel. "Then you can come back to court next week with a completed application, and you have to be prepared to testify in support of your application next week. If you choose not to testify, then I'll make a decision whether your application can be granted or not." The IJ denied Antia-Perea's requested continuance to allow for the processing of the pardon application, however, reasoning that the grant of a pardon was "too speculative" to warrant a continuation of the already protracted proceedings.

At the continued hearing a week later, counsel presented the IJ with several documents in support of Antia-Perea's application for cancellation of removal, including his wife's naturalization papers, tourist cards issued by the Colombian consulate listing Puerto Rico as Antia-Perea's place of birth, and birth certificates of Antia-Perea's adult children that said the same. Antia-Perea did not testify, nor did he seek any other type of relief, such as voluntary departure.

The IJ issued a written decision on September 26, 2011. The IJ found that the Government had carried its burden of

proving Antia-Perea removable by clear and convincing evidence by way of the I-213. The IJ cited Seventh Circuit case law for the proposition that the I-213 is "presumptively reliable" such that it is admissible as evidence of the truth of its contents barring any countervailing evidence of inaccuracy or duress. The IJ also explained that he denied Antia-Perea's subpoena request for lack of good cause "because he did not present any evidence undermining the accuracy of the document or the methods by which it was obtained." The IJ rejected Antia-Perea's reliance on *Malave* and concluded that without some evidence impugning the I-213, "it is not apparent what information the respondent would elicit through cross-examination of its author." He ruled that "[t]he regulations governing subpoenas require at least that much," and cited in support 8 C.F.R. § 1003.35(b)(2), which by its terms requires a party applying for a subpoena "to state in writing or at the proceeding, what he or she expects to prove by such witnesses or documentary evidence, and to show affirmatively that he or she has made diligent effort, without success, to produce the same."

The IJ also formally denied Antia-Perea's request for cancellation of removal. The IJ found that, in light of the rap sheets, which Antia-Perea conceded were applicable to him, "there is at least a 'reasonable indicat[ion]' that the respondent is barred from cancellation of removal by section 240A(b)(1)(C)," 8 U.S.C. § 1229b(b)(1)(C). The IJ further noted that Antia-Perea had sought a continuance to seek a pardon but that he had denied the request because he did not want to "delay proceedings and finds the respondent's request too speculative."

**B. Appeal to the BIA.** Antia-Perea timely appealed the IJ's decision to the BIA. He contended that the IJ erred in (1) admitting the Form I-213 into evidence; (2) denying his request to cross-examine the maker of the Form I-213; (3) ruling that the Government had established alienage; (4) ordering him deported; and (5) denying his request for a continuance to seek a gubernatorial pardon. Antia-Perea also asserted that the IJ was biased in favor of the Government and against him, and denied him his right to due process.

The BIA dismissed the appeal after reviewing the IJ's findings of fact for clear error and all other issues *de novo*. Especially pertinent here, the BIA agreed with the IJ that DHS met its burden of establishing alienage and removability based on the Form I-213. The BIA found that "[t]here is nothing facially suspect about the Form I-213," and that absent some evidence or even allegations that an I-213 is inaccurate, it may be considered inherently reliable and can be sufficient to establish alienage. Notwithstanding Antia-Perea's failure to raise the issue before the IJ, the BIA acknowledged that the rap sheets in the record indicated that Antia-Perea was born in Puerto Rico. It accorded these documents little weight, however, reasoning that "[i]nformation such as place of birth for such documents is typically provided by the individual to whom they pertain, rather than an independent or verified source." The BIA also agreed with the IJ that "[w]hether and when the respondent may be granted pardon is too speculative to provide good cause for a continuance." Additionally, the BIA found that Antia-Perea "has not shown he was prejudiced by the denial of a continuance" to seek a pardon, because "[t]he finding of removability was not based on his convictions, and the lack of a disqualifying conviction is only one of several statutory

factors for cancellation of removal that the respondent did not demonstrate." The BIA rejected Antia-Perea's assertions of bias out of hand for failure to cite specific examples of impropriety.

**C. First Motion for Reconsideration.** Antia-Perea timely petitioned this Court for review of the BIA's decision (No. 12-3641). While his petition was pending, he filed a motion asking the BIA to reconsider its decision. He essentially reiterated the contentions that he made on initial review and asserted that the BIA erred in rejecting his requests for relief.

The BIA denied Antia-Perea's motion to reconsider without engaging in new analysis. Antia-Perea timely filed a petition for review of this decision (No. 13-1228).

**D. Motion to Reopen.** In January 2013, Antia-Perea filed a motion requesting that the BIA reopen his proceedings pursuant to 8 C.F.R. § 1003.2(c)(1) and remand them to a different IJ. His motion presented virtually all of the arguments that the BIA previously rejected. In the final paragraphs of his motion, he raised for the first time an alleged fear of deportation to Colombia and sought a hearing "on his request for political asylum, withholding of removal, and/or protection under the United Nations Convention Against Torture." In support of this request for relief, he cited a *60 Minutes* report on the "Super Cartel" in Colombia and submitted affidavit testimony that he feared "for [his] life if [he is] deported to Colombia because the Super Cartel may want to retaliate against [him] if they were to find out [his] daughter is an [Immigration and Customs Enforcement] ICE agent." Antia-Perea later supplemented this motion with a transcript of the segment on the Super Cartel.

The BIA denied Antia-Perea's motion to reopen on April 12, 2013. It noted that "[m]ost of the issues raised in the respondent's motion to reopen were adequately addressed in our October 22, 2012, decision or were addressed in our January 18, 2013, decision." Accordingly, the BIA substantively addressed only Antia-Perea's requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). It did so briefly, concluding that Antia-Perea failed to "show prima facie eligibility for asylum and withholding of removal" because he failed to show that "the Super Cartel would likely become aware upon his return to Colombia (or after) that his daughter is an ICE agent." Because his CAT claim was based on the same evidence, the BIA summarily denied that claim as well. Antia-Perea petitioned for review of the BIA's decision (No. 13-1895).

**E.  Second Motion for Reconsideration.** On May 9, 2013, Antia-Perea filed with the BIA a motion to reconsider its denial of his motion requesting relief from removal. He argued that "the evidence he provided the BIA was sufficient to demonstrate that his fear of persecution is both subjectively genuine and grounded in an objectively reasonable basis." He also claimed that the BIA's failure to grant him a hearing infringed his due process rights and "that to remove him to Colombia would be violative of the International obligations of the United States." Antia-Perea added for the BIA's consideration two news articles about ICE agents and informants getting killed by Mexican drug cartels in East El Paso, Texas.

The BIA denied Antia-Perea's motion, which it treated as a motion to reopen in light of the newly appended articles. It

concluded that there was "little commonality" between Antia-Perea's fear and the fear expressed by one of the subjects in the *60 Minutes* segment. The BIA considered Antia-Perea's two news articles and concluded that he was "not similarly situated to ICE agents, Texas Rangers, or informants for ICE." Antia-Perea filed a fourth petition seeking review of this decision (No. 13-2737).

## II.

There is no dispute that all four of Antia-Perea's petitions for review concern final decisions, were timely submitted, and are properly before this Court. *See El-Gazawy v. Holder*, 690 F.3d 852, 857 (7th Cir. 2012). Our jurisdiction to review the petitions, which assert legal and constitutional claims, is secure. *See* 8 U.S.C. § 1252(a)(2)(D). Accordingly, we address in turn the arguments that Antia-Perea has properly presented and preserved throughout the administrative process.

## A.

Antia-Perea first contends that the IJ and BIA violated his due process rights by denying him an opportunity to cross-examine the DHS agent who drafted the I-213.

Aliens in removal proceedings are entitled to due process of law under the Fifth Amendment. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Statutory provisions also impose procedural requirements on removal proceedings. *See* 8 U.S.C. § 1229a(b)(4). Any proceeding that meets the requirements of the statute also satisfies the requirements of constitutional due process. *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006). Because Antia-Perea does not challenge the constitutional adequacy of the statutory rights, we focus our

analysis on those statutory rights. *See Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011); *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010)

Section 1229a(b)(4)(B) provides that an alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." An alien who challenges a removal order by claiming a violation of these rights must show both that the proceeding did not meet these requirements and that he was prejudiced as a result. *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007).

The Government must demonstrate removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3). The Federal Rules of Evidence do not apply in immigration proceedings. *Doumbia v. Gonzales*, 472 F.3d 957, 962 (7th Cir. 2007). Evidence is admissible "so long as it is probative and its admission is fundamentally fair." *Barradas v Holder*, 582 F.3d 754, 762 (7th Cir. 2009). The fairness of an evidentiary submission depends in part on its reliability. *Duad v. United States*, 556 F.3d 592, 596 (7th Cir. 2009).

As Antia-Perea concedes, it is well established that the I-213 is a presumptively reliable and admissible document. Indeed, "[a]s a general rule, a Form I-213 is treated as inherently trustworthy and admissible *even without the testimony of the officer who prepared it*." *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013) (emphasis added); see also *Gutierrez-Berdin v. Holder*, 618 F.3d 647, 653 (7th Cir. 2010) ("Form I-213 is a presumptively reliable administrative document."). This is because when the information sought to be admitted was "recorded by a[ ] [DHS] agent in a public

record," the absent agent "cannot be presumed to be an unfriendly witness or other than an accurate recorder." *Barradas v. Holder*, 582 F.3d 754, 763 (7th Cir. 2009) (quoting *Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir.1995)). Accordingly, we have held that an I-213 is reliable unless there is some indication that the information it contains is manifestly incorrect or was obtained by duress. *Id.*

Antia-Perea did not introduce any evidence or make any argument challenging the contents, creation, or reliability of the I-213 at the removal stage of his proceedings. He nonetheless contends that his case is closely analogous to *Pouhova v. Holder*, 726 F.3d 1007 (7th Cir. 2013), in which we held that an alien improperly was denied the opportunity to cross-examine the drafter of an I-213 notwithstanding the general rule to the contrary. We respectfully disagree. In *Pouhova*, the Government attempted to prove that the petitioner assisted an alien who was trying to enter the United States illegally by submitting a transcript of an agent's interview with the alleged smuglee—not the petitioner—and an I-213 that was prepared seven years later purportedly documenting that conversation. Pouhova challenged the admission of the transcript and the I-213, arguing that she was prejudiced without the opportunity to cross-examine the interviewee. We held that the I-213 "exhibit[ed] several shortcomings that undermine the usual presumption of reliability, none of which were addressed by the Board," including the seven-year lapse of time between the interview and the Form's creation, its significant divergence from [the interviewee's] statement, its reliance on untranslated testimony, and the fact that it "recorded a conversation not with Pouhova, who was the subject of the form and the removal proceedings, but with [another

individual].” *Id.* at 1014; *see also id.* at 1015 (“This I-213 therefore was not inherently reliable because it was recorded seven years late, its critical information was obtained from someone other than the subject of the form, and it contradicts the other written account of its source.”). We expressly noted that “[i]n a more typical case, the subject herself will have some basis to contest the statements in the document. She will have been present for the conversation that is reported.” *Id.*

This case is distinguishable from *Pouhova* in two significant respects. First, there is no indication that the I-213 was prepared years after the fact like the one in *Pouhova*. To the contrary, it was prepared on the same day that Agent Ochoa interviewed Antia-Perea. Second, and more importantly, Antia-Perea was present for the interview recorded in the I-213 and accordingly could have challenged its contents or creation himself. *Pouhova* does not hold that an alleged alien always must be given an opportunity to examine the maker of an I-213; *Pouhova* instead holds that it is fundamentally unfair for an IJ to admit and rely upon a belatedly prepared I-213 documenting an interview with someone other than the respondent without giving the respondent an opportunity to cross-examine the interviewee or the DHS agent who conducted the interview. Here, Antia-Perea—who was the interviewee—could have chosen to tell his side of the story or otherwise called into question the circumstances surrounding the I-213’s creation. He declined every opportunity to do so, and the IJ did not err by drawing adverse inferences from Antia-Perea’s silence. *See Gutierrez-Berdin v. Holder*, 618 F.3d 647, 656 (7th Cir. 2010); *Flores-Leon v. INS*, 272 F.3d 433, 440 (7th Cir. 2001).

Antia-Perea also relies heavily on *Malave v. Holder*, 610 F.3d 483 (7th Cir. 2010), for the proposition that he "is entitled to cross-examine witnesses of the government, whether the evidence comes in orally or in writing." But *Malave*, like *Pouhova*, is distinguishable. In *Malave*, we held that an alien's right to due process at her removal hearing was violated when she did not have the opportunity to cross-examine her estranged husband, whose statement the Government relied upon to prove a sham marriage. Like the statement in *Pouhova*, however, the statement in *Malave* was made by someone other than the respondent. While it is true that DHS cannot nullify aliens' right to cross-examination by presenting written declarations rather than live testimony, *Malave*, 610 F.3d at 487, the individual whose statements were recorded in the I-213 was Antia-Perea himself. And Antia-Perea elected not to challenge the contents of the I-213 or the circumstances surrounding its creation. He also elected not to reiterate his request for a subpoena, or conform it to the specifications of 8 C.F.R. § 1003.35(b)(2). Antia-Perea received all of the process to which he was entitled with respect to the I-213.

**B.**

Antia-Perea next argues that the rap sheets and the documents that he submitted at the relief stage of his proceedings—the incomplete application for cancellation of removal, the travel card, his wife's naturalization papers, and his children's birth certificates—undermined the inherent reliability of the I-213 and rendered it insufficient to establish that he was an alien. The IJ considered only the I-213 and found it sufficient to establish Antia-Perea's alienage. In reviewing the IJ's decision, the BIA also took

into account the rap sheets and documents that Antia-Perea submitted in support of his application for cancellation of removal. The BIA nonetheless concluded that "the totality of the evidence" was sufficient to establish Antia-Perea's alienage. Antia-Perea contends that the IJ and BIA erred as a matter of law.

"When the Board agrees with the decision of the immigration judge, adopts that decision and supplements that decision with its own reasoning, as it did here, we review the immigration judge's decision as supplemented by the Board." *Cece v. Holder*, 733 F.3d 662, 675 (7th Cir. 2013) (en banc). We review findings of fact for substantial evidence and reverse only if the evidence compels a different result. *Young Dong Kim v. Holder*, 737 F.3d 1181, 1184 (7th Cir. 2013). "We review questions of law *de novo*, deferring to the Board's reasonable interpretation set forth in precedential opinions interpreting the statute." *Id.*

We cannot conclude that the IJ or BIA erred under any standard. "In the case of a respondent charged as being in the United States without being admitted or paroled, the [Government] must first establish the alienage of the respondent." 8 C.F.R. § 1240.8(c); *see also Mozdzen v. Holder*, 622 F.3d 680, 683 (7th Cir. 2010); *Gutierrez-Berdin*, 618 F.3d at 657. Once the Government makes that showing, the burden shifts to the respondent to prove that he is lawfully present in the United States pursuant to a prior admission. 8 C.F.R. § 1240.8; *Mozdzen*, 622 F.3d at 683. Here, during the removal stage of the proceedings, which were bifurcated at Antia-Perea's request, the Government came forward with an I-213 stating that Antia-Perea had "voluntarily admitted that he is not a citizen of the United States" and that he was "a native

and citizen of Colombia." Antia-Perea declined to raise any challenge to the contents or creation of the I-213. He likewise neglected to point out the discrepancies between the rap sheets and the I-213 or proffer the documents that he later submitted during the relief stage of the proceedings. Accordingly, the IJ had no reason not to afford the I-213 the standard presumption of reliability. Nor did the IJ have a basis to deviate from our precedent, which holds that a "sparse" record consisting of an NTA and I-213 can be sufficient to establish alienage where the alien remains silent and fails to dispute the Government's evidence. *See Gutierrez-Berdin*, 618 F.3d at 656–57. The IJ properly concluded that the burden of proof shifted to Antia-Perea, and there is no question that he failed to carry it.

The BIA's supplemental (and apparently *sua sponte*, as Antia-Perea did not argue that the rap sheets or his documents undermined the I-213) consideration of the rap sheets and the submissions that Antia-Perea made at the relief stage led it to the same conclusion that the IJ reached. The BIA weighed Antia-Perea's silence and selectively incomplete application for cancellation of removal against the documents indicating that he was a citizen of Puerto Rico and found the former more persuasive than the latter. We find no error in this assessment. Immigration courts are permitted to draw adverse inferences from a person's refusal to answer questions about his origin during a hearing, *Gutierrez-Berdin*, 618 F.3d at 656, and Antia-Perea has not demonstrated that such inferences were unwarranted here.

## C.

Antia-Perea next contends that the IJ violated his due process rights by denying his request for continuance to

allow him to seek a gubernatorial pardon. He asserts that the Board erred when it agreed that pursuit of a pardon was too speculative to provide good cause for a continuance, because 8 U.S.C. § 1227(a)(2)(A)(vi) expressly provides that an alien may not be adjudicated removable on the basis of a criminal conviction if he receives a full and unconditional pardon for the offense. Not only do these contentions miss the mark because Antia-Perea was not found removable based on his convictions, they do not establish a due process violation.

To establish a due process violation, Antia-Perea must demonstrate that he had a protected liberty or property interest in seeking the continuance. *Adame v. Holder*, --- F.3d ---, 2014 WL 3909115, at *2 (7th Cir. Aug. 12, 2014) (citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987)). He cannot do so. "While a noncitizen has a protected liberty interest in remaining in the United States, that interest does not encompass a right to favorable decisions that would allow the petitioner to seek discretionary relief." *Id.*; *see also Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) (holding that the right to due process "does not extend to discretionary forms of relief from removal" and that "the opportunity for discretionary relief from removal is not a protected liberty interest because aliens do not have a legitimate claim of entitlement to it"). A gubernatorial pardon is a quintessential form of discretionary relief. "There is no Fourteenth Amendment property or liberty interest in obtaining a pardon in Illinois—no substantive entitlement, in other words—and so no ground for a claim of denial of due process." *Bowens v. Quinn*, 561 F.3d 671, 673 (7th Cir. 2009). Accordingly, neither the Board nor the IJ violated Antia-Perea's due process rights by denying the continuance.

**D.**

Antia-Perea next contends that the BIA erred in denying his motion to reopen because it "lump[ed] together in one broad brush each of Petitioner's claims for asylum, withholding of removal, and protection under CAT" rather giving each its due consideration. We will uphold the BIA's denial of a motion to reopen "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Munoz-Avila v. Holder*, 716 F.3d 976, 982 (7th Cir. 2013).

Generally, the Board may deny an applicant's motion to reopen if the applicant fails to establish a prima facie case of eligibility for the underlying relief sought. *Kay v. Ashcroft*, 387 F.3d 664, 674 (7th Cir. 2004). That is the basis on which the BIA denied Antia-Perea's motion. Antia-Perea contends that the Board's analysis was flawed, however, because it did not separately parse his requests for asylum, withholding of removal, and protection under the CAT. Although we have recognized that it may be "problematic" for the Board to analyze distinct claims for relief in a single stroke, we have nonetheless denied petitions for relief predicated on this "error" when we are able to discern the BIA's reasoning for its decision as to each claim. *See Munoz-Avila v. Holder*, 716 F.3d 976, 982 (7th Cir. 2013). We likewise have recognized that there is significant overlap among claims for asylum, withholding of removal, and relief under the CAT such that an unsuccessful asylum claim may doom related claims for withholding of removal or protection under the CAT, as those types of relief have "more

stringent" requirements. *See Hassan v. Holder*, 571 F.3d 631, 644 (7th Cir. 2009).

The Board's analysis in this regard was less than stellar. Although it demonstrated that it had considered Antia-Perea's evidentiary submissions, the Board neglected to set forth the standards against which those submissions were measured for each form of relief. Nonetheless, it is clear from the Board's discussion that it denied Antia-Perea's requests for asylum and withholding of removal because it concluded that the harm Antia-Perea feared was too speculative to merit relief. This is a valid and rational basis on which to deny both types of claim. Asylum applicants who have not been persecuted in the past may demonstrate eligibility for relief only by showing a fear of future persecution "that is subjectively genuine and objectively reasonable." *Georgieva v. Holder*, 751 F.3d 514, 522 (7th Cir. 2014). The objective component requires the applicant to prove either a reasonable probability that he will be singled out for persecution or a pattern or practice against a particular group to which he belongs. *Id.* at 522–23. Similarly, an applicant seeking withholding of removal must demonstrate a "clear probability" of harm by showing that it is "more likely than not" that he will suffer persecution if removed. *Hassan*, 571 F.3d at 644. This "clear probability" requirement is "more stringent" than the requirements for asylum eligibility. *Id.* Thus, the Board's conclusion that Antia-Perea's evidence did not demonstrate that the Super Cartel was likely to become aware of his daughter's employment with ICE necessarily undermined both of these claims.

As we have recognized in *Hassan* and elsewhere, the burden of proof for CAT protection is more stringent still

than that for asylum or withholding of removal, as the applicant must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *Hassan*, 571 F.3d at 644. Here, the Board rationally, albeit summarily, concluded that Antia-Perea's evidence—which, notwithstanding his current contentions was the same for all three types of relief—could not support a likelihood of torture if it was too speculative to demonstrate persecution. *See Bathula v. Holder*, 723 F.3d 889, 903 (7th Cir. 2013). The harsh definition of "torture," *see* 8 C.F.R. § 208.18, "sets a high bar for relief," *Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011), and the Board did not abuse its discretion in concluding that Antia-Perea could not clear it with his evidence concerning the Super Cartel.

### E.

Antia-Perea finally contends that his due process rights were violated because the IJ was not fair and impartial. The BIA rejected this argument during Antia-Perea's first appeal because he failed to offer any evidence of bias aside from the adverse rulings against him, and declined to revisit its decision on reconsideration. We find no error in these rulings.

The Fifth Amendment's due process clause guarantees the right to an impartial decisionmaker, *Firishchak v. Holder*, 636 F.3d 305, 309 (7th Cir. 2011), but "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). And judicial rulings are all that Antia-Perea is able to point to; he contends that the IJ erred in denying his subpoena request, in finding the I-213 reliable, and in denying his request for

continuance. Antia-Perea has not demonstrated how the IJ's procedurally and legally correct rulings evince bias. The Board did not err in rejecting Antia-Perea's underdeveloped assertions of bias in the first instance or abuse its discretion in denying his motion to reconsider. *See Muratoski v. Holder*, 622 F.3d 824, 830 (7th Cir. 2010).

## III.

For all of the reasons stated above, Antia-Perea has not demonstrated that the IJ or the Board legally erred or denied him due process. Accordingly, his consolidated petition for review is DENIED.